NO. 12-08-00384-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

MIGUEL LOPEZ,                                         §                      APPEAL
FROM THE 114TH

APPELLANT

                                                                        

V.                                                                    

                                                                        §                      JUDICIAL
DISTRICT COURT 

THE GARBAGE MAN, INC. d/b/a  THE    

G-MAN, INC., GARY HAWLEY,
BRENDA

HAWLEY, DAVID MUNOZ,
ANTHONY

JOHNSON, AND LORETTA AYRES,

APPELLEES                                                 §                      SMITH
COUNTY, TEXAS







MEMORANDUM
OPINION

            Miguel
Lopez appeals the summary judgment entered in favor of Appellees The Garbage
Man, Inc. d/b/a The G-Man, Inc., Gary Hawley, Brenda Hawley, David Munoz,
Anthony Johnson, and Loretta Ayres.  Lopez also appeals the trial court’s
denial of his no evidence motion for summary judgment.  Lopez raises four
issues on appeal.  We dismiss for want of jurisdiction in part and affirm in
part.

 

Background

            On
or about November 14, 2006, Lopez was working for The G-Man, Inc. as a
“thrower” on one of its garbage trucks.  Lopez was injured when a garbage can
fell on his left hand from the mechanism on the truck designed to raise the can
over the truck and empty it.  Lopez was treated for his injuries, spent
approximately eight days in the hospital, and, ultimately, had a majority of
his left ring finger amputated.  

Lopez
returned to work as a “thrower” on February 16, 2007.  On or before this date,
Lopez and Appellees commenced a series of negotiations concerning Lopez’s being
compensated for his injury and the resulting medical treatment.  During the
period of negotiations, multiple persons assisted Lopez with translation and
interpretation of the proposed agreement because Lopez could not read or
understand English.  Following the parties’ first meeting, Lopez was provided
with a copy of the proposed agreement for his further review.  The parties
later reconvened, but parted ways without reaching an agreement.  Lopez again took
the proposed release agreement with him.

Upon
the parties’ third meeting, Lopez was assisted by a certified interpreter,
Norma Meeks.[1] 
Meeks translated the agreement for Lopez from English to Spanish and sought to
assure that Lopez understood the terms of the agreement.  Thereafter, Lopez
executed the agreement.  Under the terms of the agreement, Appellees[2]
agreed to pay Lopez $5,000.00 in $100.00 monthly increments.  The parties
further agreed to “carve out” of the release Lopez’s past medical expenses and
reasonable and necessary future medical expenses.  In exchange, Lopez agreed to
release Appellees from all claims, including claims for negligence and gross
negligence, and to indemnify Appellees against any future claims and demands in
the event that any suit predicated on the same event or events was instituted
against Appellees.  

Lopez’s
employment was terminated in July 2007.  On November 1, 2007, Lopez filed the
instant suit against Appellees alleging that they were liable to him for his
previous injury under theories of negligence and negligence per se.  Lopez also
sought to recover exemplary damages and to pierce the corporate veil of The
Garbage Man, Inc.  Appellees filed a counterclaim asserting that Lopez breached
the release agreement.  

Subsequently,
Brenda Hawley filed a no evidence motion for summary judgment.  Lopez filed a
response.  On May 9, 2008, the trial court granted Ms. Hawley’s no evidence
motion and ordered that Lopez’s causes of action against her be severed and dismissed
with prejudice.[3]  

On
May 28, 2008, Appellees[4]
filed their Third Amended Motion for Summary Judgment on Lopez’s negligence
causes of action based on their affirmative defense of release.  Soon
thereafter, Lopez filed a no evidence motion for summary judgment against
Appellees arguing that there was no evidence to support that the release
complied with Texas Labor Code, subsections 406.033(f) and (g).  The parties
each filed a response to the other’s motion.  As part of his response, Lopez
made multiple objections to Appellees’ motion and supporting evidence. 
Ultimately, the trial court overruled Lopez’s objections, granted Appellees’
Third Amended Motion for Summary Judgment, and denied Lopez’s no evidence
motion.  The parties nonsuited their remaining causes of action against one
another, and this appeal followed.

 

Objections to Summary Judgment Evidence

            In
his first issue, Lopez argues that the trial court erred when it overruled his
objections to Appellees’ motion for summary judgment.  Specifically, Lopez
argues that the trial court erred in overruling the following objections:  (1)
Appellees’ motion failed to address his claims for piercing the corporate veil
and exemplary damages based upon malice and/or fraud; (2) Appellees’ motion
failed to show that there is no genuine issue as to any material fact and that
Appellees are entitled to judgment as a matter of law; (3) the verification attached
to Appellees’ motion (a) did not constitute summary judgment evidence, (b) did
not authenticate any documents attached to it, (c) was not based upon the
affiant’s personal knowledge because it qualified the correctness of the
subject information, and (d) did not state that the documents attached are true
and correct copies of the originals in the affiant’s possession or true and
correct copies of certified copies on file with the court; (4) the documents
contained in Exhibits “A” and “I” to Appellees’ motion are unauthenticated
photocopies and are not competent summary judgment evidence; (5) Appellees’
motion contains Lopez’s original answer to their counterclaim, a pleading that
is not summary judgment evidence; and (6) neither Appellee Loretta Ayres’s
affidavit nor the documents attached to it demonstrate that Lopez was not under
duress when he executed the release or that Ayres delivered paychecks to Lopez
when he was in the hospital.

Standard
of Review

            We
review a trial court's ruling on an objection to summary judgment evidence for
an abuse of discretion.  See Cruikshank v. Consumer Direct
Mortgage, Inc., 138 S.W.3d 497, 499 (Tex. App.–Houston [14th Dist.]
2004, pet. denied) (citing City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995)).  A trial court abuses its discretion if it acts
without reference to guiding rules or principles.  Williams v. Brown,
33 S.W.3d 410, 411 (Tex. App.–Houston [1st Dist.] 2000, no pet.).  

Motion Failed
to Address Claims for Piercing Corporate Veil and Exemplary Damages

            Lopez
first objected that Appellees’ motion failed to address his claims for piercing
the corporate veil and exemplary damages based upon malice and/or fraud.  A
defendant moving for summary judgment must either negate at least one essential
element of the nonmovant’s cause of action or prove all essential elements of
an affirmative defense.  See Randall's Food Markets, Inc. v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995).  Here, Appellees raised the
affirmative defense of release.  See Tex.
R. Civ. P. 94.  As set forth in greater detail herein, to establish this
affirmative defense, Appellees were required to demonstrate that (1) by a valid
release, (2) Lopez agreed that a duty or obligation owed to him by Appellees is
discharged immediately on the occurrence of a condition, and (3) the release
mentioned the claim to be released.  See Dresser Indus., Inc. v. Page
Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993); Victoria Bank
& Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991).  Recovery of
exemplary damages requires a finding of an independent tort with accompanying
actual damages.  See Schlueter v. Schlueter, 975 S.W.2d 584, 589
(Tex. 1998).  Furthermore, they are designed to penalize a defendant for
outrageous, malicious, or otherwise morally culpable conduct.  See Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 40 (Tex. 1998).  Moreover,
“piercing the corporate veil” is a theory utilized to impose individual
liability upon shareholders, officers, and directors of a corporation, who are
normally insulated from the corporation’s liability.  See Phillips v.
United Heritage Corp., 319 S.W.3d 156, 158 (Tex. App.–Waco 2010, no
pet.).  This theory is not a substantive cause of action.  See id.
(citing Mapco, Inc. v. Carter, 817 S.W.2d 686, 688 (Tex.1991)).  Further
still, neither of these theories is related to Appellees’ affirmative defense
of release.  Therefore, we hold that Appellees were not required to address
these theories in their motion for summary judgment.  Accordingly, we conclude
that the trial court did not abuse its discretion in overruling Lopez’s
objection.            

Motion
Failed to Demonstrate Requirements of Texas Rule of Civil Procedure Rule
166a(c)

            Lopez
next objected that Appellees’ motion failed to show that there is no genuine
issue as to any material fact and that Appellees are entitled to judgment as a
matter of law.  We cannot determine from this objection whether Lopez intended
to challenge the sufficiency of Appellees’ summary judgment motion or to object
to the motion because he contended that Appellees were not entitled to summary
judgment under rule 166a(c).  Based on our review of Appellees’ motion, we
conclude that it is not insufficient under rule 166a(c).  In their motion,
Appellees argue that they are entitled to judgment as a matter of law on
Lopez’s negligence based claims as a result of Lopez’s execution of the release
agreement.  Appellees further argue that there is no genuine issue of material
fact underlying this affirmative defense.  Finally, Appellees offer authority
and citation to attached summary judgment evidence in support of their motion. 
To the extent Lopez’s objection was based on the sufficiency of Appellees’
motion, we conclude that the trial court did not abuse its discretion in overruling
his objection.  On the other hand, if the intended substance of Lopez’s
objection was that Appellees were not entitled to summary judgment, we will
resolve this question in conjunction with our resolution of Lopez’s second
issue.

Verification
Attached to Appellees’ Motion and Authenticity of Exhibits “A” and “I”

            Lopez
further objected that the verification attached to Appellees’ motion (a) did
not constitute summary judgment evidence, (b) did not authenticate any
documents attached to it, (c) was not based upon the affiant’s personal
knowledge, and (d) did not state that the documents attached are true and
correct copies of the originals in the affiant’s possession or true and correct
copies of certified copies on file with the court.  Appellees respond that the
verification was not intended to constitute summary judgment evidence, but
rather was intended to authenticate those exhibits to their motion that are not
self-authenticating.  Based on our review, only two of the exhibits relied upon
by Appellees in their motion for summary judgment required authentication––Exhibit
“A,” the release agreement, and Exhibit “I,” receipts for Lopez’s medical
bills.  

The
record indicates that Exhibit “A” was also an exhibit to Lopez’s deposition. 
Lopez’s deposition transcript is Exhibit “B” to Appellees’ motion.  When the
release agreement became a deposition exhibit, Lopez, the deponent, who was
subject to cross examination about the release agreement, affirmed that he previously
had seen the document, and identified his signature at the bottom of it.  At
that point, the release agreement became competent summary judgment evidence.  See
Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000) (party’s own
interrogatory answer became competent summary judgment evidence when it became
a deposition exhibit, party affirmed in her deposition that it was correct, and
party was subject to cross examination about the assertions in her
interrogatory answer).  Thus, we conclude that Exhibit “A” was properly
authenticated.

We
next consider whether Exhibit “I” was properly authenticated by Appellees’
attorney’s verification.  The requirement of authentication or identification
as a condition precedent to admissibility is satisfied by evidence sufficient
to support a finding that the matter in question is what the proponent claims. 
Tex. R. Evid. 901(a).  Here,
Appellees’ counsel signed a notarized verification swearing, in pertinent part,
as follows:  

 

I am the attorney for Defendants … in the above styled
and numbered cause.  I am fully qualified and authorized to make this
Verification.  The facts contained in Defendants’ Third Amended Motion for
Summary Judgment are true and correct based upon information and belief.  Further,
the exhibits attached hereto and incorporated herein are true and correct.  

 

 

Exhibit “I”
included a cover page that described the exhibit as “ZERO BALANCE RECEIPTS FOR
MEDICAL BILLS FOR PLAINTIFF.”  Lopez argues that Appellees’ counsel’s broad
description of the exhibits as being “true and correct” does not satisfy rule
901(a)’s requirement that the proponent demonstrate the document is what he
claims.  We agree with Lopez that Appellees’ counsel’s description of the
exhibits as merely “true and correct” is a broad one.  Moreover, a better
description would be that, for instance, Exhibit “I” contains “true and correct
copies of [Zero Balance Receipts for Medical Bills for the Plaintiff] the
originals [of which are] in [my] possession.”  See, e.g., Brosseau v.
Ranzau, 81 S.W.3d 381, 393 (Tex. App.–Beaumont 2002, pet. denied). 
However, we note that the verification encompassed Exhibit “I.”  It is,
therefore, reasonable that the description on the cover page was likewise encompassed
by the verification.  Thus, the trial court could have reasonably concluded
that Appellees’ counsel was swearing not only that the contents of Exhibit “I”
are true and correct, but that the description of the exhibit on the cover page
is also true and correct.  We conclude that the trial court did not act without
reference to guiding rules or principles when it determined that Appellees’
counsel’s verification supplied evidence sufficient to support a finding that
Exhibit “I” is what Appellees’ counsel claimed.[5]  

Lopez
further argues that Appellees’ verification does not demonstrate that it is
based on Appellees’ counsel’s personal knowledge because it is based on his
subjective belief rather than his personal knowledge.  Lopez asserts that this
language qualifies Appellees’ counsel’s statement that the facts alleged and
the exhibits attached are true and correct.  A summary judgment affidavit does
not need to recite the phrase “personal knowledge” if it is apparent that the
affiant is testifying based upon personal knowledge.  See Cooper v.
Circle Ten Council Boy Scouts of America, 254 S.W.3d 689, 698 (Tex.
App.–Dallas 2008, no pet.). Based upon our reading of Appellees’ counsel’s
verification, we note that while he stated that the facts contained in
Defendants’ Third Amended Motion for Summary Judgment were based upon
“information and belief,” he unequivocally stated that “the exhibits attached
hereto and incorporated herein are true and correct.”  Because Appellees rely
on their counsel’s verification solely as a means to authenticate certain
exhibits that are not self-authenticating, any qualification of the truth or
correctness of the facts contained in Appellees’ motion for summary judgment
does not affect the unqualified verification of the authenticity of the exhibits.

We
conclude that the trial court did not abuse its discretion in overruling
Lopez’s objection to Appellees’ counsel’s verification or the exhibits it
authenticated.

Lopez’s
Original Answer to Appellees’ Counterclaim Not Summary Judgment Evidence

            Lopez
also objected to Appellees’ Exhibit “C” to their motion, which consisted of
Lopez’s Original Answer to Appellees’ Counterclaim.  Lopez correctly asserts
that pleadings are ordinarily not considered to be competent summary judgment
evidence, even if sworn or verified.  See Mackey v. Great Lakes Invs,
Inc., 255 S.W.3d 243, 252 (Tex. App.–San Antonio 2008, pet. denied). 
However, in the instant case, based on our review of their motion, Appellees
are not relying on Exhibit “C” as summary judgment evidence.  Rather, Appellees
cite to Exhibit “C” in only one instance as a reference point for their
description of Lopez’s factual assertions made in his pleadings concerning his
argument that Appellees procured his acquiescence to the release agreement by
duress.  Appellees’ use of Exhibit “C” to outline the issue was appropriate.  See
id.  Because Appellees do not cite Exhibit “C” as a factual basis
for their motion for summary judgment, Lopez’s objection is of no moment and
was properly overruled.  See id. at 253.

Evidentiary
Value of Ayres Affidavit

         Lopez
finally objected that neither Appellee Ayres’s affidavit, Exhibit “D,” nor the
documents attached to it demonstrate that Lopez was not under duress when he
executed the release or that Ayres delivered paychecks to Lopez when he was in
the hospital.  Lopez’s objection does not address errors in the substance or
form of Ayres’s affidavit.  Rather, he contends that it offers no evidentiary
support to the facts alleged in Appellees’ motion for summary judgment.  This
objection addresses the propriety of the trial court’s summary judgment as
opposed to a defect in the form of the Ayres affidavit.  Compare Tex. R. Civ. P. 166a(c) with Tex. R. Civ. P. 166a(f).  Accordingly,
we hold that the trial court did not abuse its discretion in overruling Lopez’s
objection to Exhibit “D.”  We will address the issue of whether, based upon the
summary judgment evidence, Appellees’ were entitled to judgment as a matter of
law in our discussion of Appellees’ second issue.  

            Lopez’s
first issue is overruled.


Appellees’ Motion for Summary Judgment

In
his second issue, Lopez argues that the trial court erred in granting
Appellees’ Third Amended Motion for Summary Judgment.  

Standard of Review and
Governing Law

Because
the propriety of summary judgment is a question of law, we review the trial
court’s summary judgment determinations de novo.  See Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  The standard of review for a traditional summary judgment motion
pursuant to Texas Rule of Civil Procedure 166a(c) is threefold:  (1) the movant
must show there is no genuine issue of material fact and he is entitled to
judgment as a matter of law; (2) in deciding whether there is a disputed,
material fact issue precluding summary judgment, the court must take as true
evidence favorable to the nonmovant; and (3) the court must indulge every
reasonable inference from the evidence in favor of the nonmovant and resolve
any doubts in the nonmovant's favor. See Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548–49 (Tex.1985); Palestine Herald-Press Co. v. Zimmer,
257 S.W.3d 504, 508 (Tex. App.–Tyler 2008, pet. denied).  

A
defendant moving for summary judgment must either negate at least one essential
element of the nonmovant's cause of action or prove all essential elements of
an affirmative defense.  See Randall's Food Markets, Inc.,
891 S.W.2d at 644.  We are not required to ascertain the credibility of
affiants or to determine the weight of evidence in the affidavits, depositions,
exhibits and other summary judgment proof. See Gulbenkian v. Penn,
151 Tex. 412, 252 S.W.2d 929, 932 (1952); Zimmer, 257 S.W.3d at
508.  The only question is whether or not an issue of material fact is
presented.  See Tex. R. Civ. P.
166a(c).  Once the movant has established a right to summary judgment, the
nonmovant has the burden to respond to the motion for summary judgment and present
to the trial court any issues that would preclude summary judgment.  See,
e.g., City of Houston v. Clear Creek Basin Authority, 589
S.W.2d 671, 678–79 (Tex. 1979).  When a trial court’s order granting summary
judgment does not specify the ground or grounds relied on for the ruling,
summary judgment will be affirmed on appeal if any of the theories advanced are
meritorious.  State Farm Fire & Cas. Co. v. S.S., 858
S.W.2d 374, 380 (Tex. 1993).

Appellees’
motion for summary judgment was based on their affirmative defense of release. 
A release is an agreement or contract in which one party agrees that a duty or
obligation owed by the other party is discharged immediately on the occurrence
of a condition.  Dresser Indus., 853 S.W.2d at 508; Williams
v. Glash, 789 S.W.2d 261, 264 (Tex. 1990); Nat’l Union Fire Ins.
Co. v. Ins. Co. of N. Am., 955 S.W.2d 120, 127 (Tex. App.–Houston [14th
Dist.] 1997), aff'd, 20 S.W.3d 692 (Tex. 2000).  A release extinguishes
a claim or cause of action and bars recovery on the released matter.  Dresser
Indus., 853 S.W.2d at 508.

A
release agreement, valid on its face, is, until set aside, a complete bar to
any action based on matters covered in the release.  Tamez v. SW Motor
Transp., Inc., 155 S.W.3d 564, 569 (Tex. App.–San Antonio 2004, no
pet.).  To release a claim effectively, the releasing instrument must “mention”
the claim to be released.  Brady, 811 S.W.2d at 938.  Any claims
not “clearly within the subject matter” of the release are not discharged, even
if those claims exist when the release is executed.  Id.  It is
not necessary, however, for the parties to anticipate and explicitly identify
every potential cause of action relating to the subject matter of the release. 
Keck, Mahin & Cate v. Nat’l Union Fire Ins. Co., 20 S.W.3d
692, 698 (Tex. 2000).  Although releases generally contemplate claims existing
at the time of execution, a valid release may also encompass unknown claims and
damages that develop in the future.  Id.  While Appellees have
the burden of proving the affirmative defense of release, Lopez has the burden
of proving that the release should be set aside.  Sweeney v. Taco Bell,
Inc., 824 S.W.2d 289, 291 (Tex. App.–Fort Worth 1992, writ denied).

Like
any other agreement, a release is subject to the rules of construction
governing contracts, Williams, 789 S.W.2d at 264, including the
tenet that courts will not rewrite agreements to insert provisions parties
could have included or to imply restraints for which they have not bargained.  Tenneco,
Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 646 (Tex. 1996).  When
construing a contract, courts must give effect to the true intentions of the
parties as expressed in the written instrument.  Lenape Res. Corp. v.
Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996).  The
contract must be read as a whole rather than by isolating a certain phrase,
sentence, or section of the agreement.  State Farm Life Ins. Co. v.
Beaston, 907 S.W.2d 430, 433 (Tex. 1995).  The language in a contract
is to be given its plain grammatical meaning unless doing so would defeat the
parties’ intent.  DeWitt County Elec. Coop., Inc. v. Parks, 1
S.W.3d 96, 101 (Tex. 1999).

In
the case at hand, the undisputed summary judgment evidence supports that Lopez
signed the agreement and that his negligence based claims are within the
subject matter of the released claims.  Lopez argues, however, that the release
agreement should be set aside because (1) there is a fact issue concerning
whether he had actual knowledge of the terms of the release agreement, (2)
there is a fact issue regarding whether Lopez signed the agreement under
duress, (3) Appellees failed to timely perform their obligations under the
agreement or performed their obligations negligently, (4) the agreement is
unconscionable, (5) the agreement fails to satisfy fair notice requirements,
(6) Lopez’s longstanding employment relationship with Gary Hawley (Hawley)
created an informal fiduciary duty upon Appellees requiring a duty of full
disclosure on their part, which Appellees failed to fulfill, and (7) Appellees
fraudulently induced Lopez to enter into the agreement.

Lopez’s
Actual Knowledge of the Terms of the Release Agreement

            Lopez
first argues that there is an issue of material fact concerning whether he had
actual knowledge of the terms of the release agreement.  A release encompasses
the contractual element of mutual intent and whether the minds of the parties
have met.  Tamez, 155 S.W.3d at 570.  Like Lopez, Tamez contended
that because he was limited in his ability to read or write English, he was
unable to understand a complex legal document such as a release agreement.  See
id.  The court of appeals in Tamez was not swayed by
this argument.  See id.  Similarly, based on the
undisputed summary judgment evidence in this case, this court is not persuaded
by Lopez’s argument.

A
person who signs a contract must be held to have known what words were used in
the contract and to have known their meaning, and he must be held to have known
and fully comprehended the legal effect of the contract.  See id.
(citing Nguyen Ngoc Giao v. Smith & Lamm, P.C., 714 S.W.2d
144, 146 (Tex. App.–Houston [1st Dist.] 1986, no writ)).  Moreover, illiteracy
is no defense and will not relieve a party of the consequences of the contract.[6] 
Tamez, 155 S.W.3d at 570.

Here,
the summary judgment evidence reflects Lopez executed the agreement with
assistance from an interpreter and after having the opportunity to review the
agreement over a period of months.  Section D of the release agreement executed
by Lopez states as follows:

 

The undersigned further states that he has both read
the foregoing Release and Agreement and has had the Release and Agreement read
to him by a duly authorized and mutually-agreed upon interpreter, and knows the
contents thereof, that he is aware of the legal consequences of the execution
thereof and that he agrees to execute this Release and Agreement of his own
free will.

            

Like the court
in Tamez, we conclude that even though English was not Lopez’s
first language, he is presumed as a matter of law to have read and understood
the contract unless he was prevented from doing so by trick or artifice.[7]  

Duress

            Lopez
next argues that there is a material fact issue regarding whether he signed the
agreement under duress.  Specifically, Lopez contends that he was told by
Hawley that he would not be permitted to return to work or to go on vacation
until after he signed the agreement.

            Duress
is an affirmative defense in confession and avoidance of the affirmative
defense of release.  Brown v. Cain Chem., Inc., 837 S.W.2d 239,
242–43 (Tex. App.–Houston [1st Dist.] 1992, writ denied).  Generally, when one
coerces another to execute a contract by taking undue or unjust advantage of
the person’s economic necessity or distress, the contract may be invalid or
unenforceable.  Wright v. Sydow, 173 S.W.3d 534, 543–44 (Tex.
App.–Houston [14th Dist.] 2004, pet. denied).   This legal theory is called
economic duress.  Id. at 544.  It requires both the acts or
conduct of the opposing party and the necessities of the alleged victim or his
fear of what a third person might do.  Id.  The victim's plight
alone will not suffice; it must be coupled with the bad acts of the
transgressor.  Id.  The mere fact that a person enters into a
contract with reluctance or as a result of the pressure of business
circumstances, financial embarrassment, or economic necessity does not, of
itself, constitute business compulsion or economic duress invalidating the
contract.  See First Texas Sav. Ass'n of Dallas v. Dicker Ctr.,
Inc., 631 S.W.2d 179, 186 (Tex. App.–Tyler 1982, no writ).  

What
constitutes duress is a question of law for the court.  Wright,
173 S.W.3d at 544.  Economic duress consists of (1) a threat to do something a
party has no legal right to do, (2) an illegal exaction or some fraud or
deception, and (3) an imminent restraint that destroys the victim's free agency
and leaves him without a present means of protection.  Id.  

Here,
even if we were to agree that Hawley’s conduct amounted to a threat, there is
no evidence that the threatened action was imminent.  The deposition testimony
of Norma Meeks, the interpreter, was unequivocal that no statement of any kind
was made by Appellees concerning Lopez’s job being in jeopardy if he did not
sign the agreement on the day the agreement was executed.  On the other hand, Lopez’s
deposition testimony regarding the timing of these “threats” is vague at best. 
According to Lopez’s testimony, any “threat” regarding his not being allowed to
return to work unless he signed the agreement was made on or before February
2007.  Lopez returned to work for Appellees on or about February 16, 2007 and
continued to work for them while the parties negotiated the agreement.  

Furthermore,
there is no indication from Lopez’s deposition testimony or elsewhere in the
summary judgment record that any “threat” regarding his not being permitted to
take vacation time until he signed the agreement was made near to or in
conjunction with his execution of the agreement on May 10, 2007.  Rather, according
to Lopez’s testimony, Hawley made this statement to him at some point during
the three month period of time when Lopez returned to work in February after
Lopez made repeated requests that he be permitted to take vacation time. 
Lopez’s vague description concerning the timing of this supposed threat is not
enough to demonstrate that the threatened action was imminent.  Moreover, there
is no evidence that Lopez, during the period of time leading up to his
execution of the agreement, voiced his dissatisfaction either with the
agreement’s terms or the statements he now claims constitute duress.  See,
e.g., Bank of El Paso v. T.O. Stanley Boot Co., 809 S.W.2d 279,
289–90 (Tex. App.–El Paso 1991), aff’d in part, rev’d in part on other
grounds, 847 S.W.2d 218 (Tex.1992); Coppedge-Link ex rel. Coppedge v.
State Farm Life Ins. Co., No. 03-03-00574-CV, 2004 WL 1572913, at *7
(Tex. App.–Austin July 15, 2004, pet. denied) (mem. op.).  Therefore, based on
our review of the summary judgment record, we hold that the threats alleged by
Lopez do not create a material fact issue on Lopez’s affirmative defense of
duress because there is no indication from the summary judgment record that the
threatened actions were imminent.

Appellees’
Failure to Perform or Negligent Performance of Their Contractual Obligations

Lopez
next argues that he was not obligated to perform under the release agreement or
that the release should be set aside because Appellees failed to timely perform
their obligations under the agreement or performed their obligations
negligently.  Specifically, Lopez argues that Appellees did not timely pay his
medical bills.

In
construing a written contract, the primary concern of the court is to ascertain
the true intentions of the parties as expressed in the instrument.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); see also Nat=l Union Fire Ins. Co. of
Pittsburgh, PA v. CBI Industries, Inc., 907 S.W.2d 517, 520 (Tex.
1995).  To achieve this objective, courts should examine and consider the
entire writing in an effort to harmonize and give effect to all the provisions
of the contract so that none will be rendered meaningless.  Nat=l Union Fire Ins. Co. of
Pittsburgh, PA, 907 S.W.2d at 520.  No single provision taken alone
will be given controlling effect; rather, all the provisions must be considered
with reference to the whole instrument.  Id.; Myers v. Gulf
Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196 (Tex. 1962).

If
the written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous, and the court will
construe the contract as a matter of law.  Coker, 361 S.W.2d at
393.  The interpretation of an unambiguous contract is a question of law, which
we review de novo.  See MCI Telecommunications Corp. v. Tex. Utils. Elec.
Co., 995 S.W.2d 647, 650 (Tex. 1999). 

In
interpreting a contract, we must presume that the parties thereto intended
every clause to have some effect; therefore, we consider each part of the
document with every other part of the document so that the effect and meaning
of one part on any other part may be determined.  Thedford Crossing, L.P.
v. Tyler Rose Nursery, Inc., 306 S.W.3d 860, 867 (Tex. App.–Tyler 2010,
pet. denied).  Moreover, we give terms their plain, ordinary, and generally
accepted meaning unless the instrument shows that the parties used such terms
in a technical or different sense.  Id.  Finally, we enforce an
unambiguous agreement as written.  Id.  We are not permitted to
rewrite an agreement to mean something it did not.  Id.  We
cannot change the contract simply because we or one of the parties comes to
dislike its provisions or thinks that something else is needed in it.  Id.  Parties to a contract are masters of their own choices and are entitled
to select what terms and provisions to include in or omit from a contract.  Id.

Here,
Lopez advances several arguments based on timing of performance.  He argues
that Appellees failed to timely pay his medical bills and that their payment of
his medical bills was a condition precedent to his obligations under the
agreement.  He further contends that the agreement contains no provision
regarding the timing of Appellees’ payment of his medical bills and is,
therefore, either an unenforceable agreement to agree or “void for
indefiniteness.”  

The
parties’ agreement stated, in pertinent part, as follows:

 

            For and in consideration of the sum of FIVE
THOUSAND AND NO/100 DOLLARS, TO BE PAID IN $100.00 INCREMENTS ON A MONTHLY
BASIS, the right and sufficiency of which are hereby acknowledged and
confessed, the undersigned, MIGUEL LOPEZ …(hereinafter referred to as
“Releasing Party”) does hereby fully release and forever discharge (except as
expressly provided below) GARY HAWLEY and THE GARBAGE MAN, INC. and
affiliate and subsidiary companies, corporations and entities, and all of their
past, present and future officers, directors, agents, servants, legal
representatives, employees, partners, predecessors, administrators and assigns
(hereinafter “Released Parties”) of and from any and all claims, rights,
actions and causes of action for property damage, personal injury, gross
negligence, exemplary damages, loss of consortium, or any causes of action, if
any, available to the Releasing Party under the Texas Insurance Code, Texas
Common Law, Rules and Regulations of the Texas State Board of Insurance, The
Texas Deceptive Trade Practices/Consumer Protection Act and the Common Law of
Texas including the cause of action for Lack of Good Faith and Fair Dealing,
treble and/or penalty damages, or any other relief, obligation, promises,
judgments, contracts or execution, of any nature, in law or in equity, that the
above-referenced claimants have asserted or may have the right to assert in the
litigation set forth above, including any claims or counterclaims of any of the
parties which were asserted or could have been asserted in the above-styled
lawsuit, and any and all past, present and future claims, demands, debts,
obligations, liability, rights, costs, expenses, compensation, actions or
causes of action of any kind or character of damage, injury, harm, financial loss,
medical expense, personal injury, property damage, interest or any other loss
or damage whatsoever, and whether for compensatory [or] punitive damages,
including, without limitation, any and all claims against which the RELEASING
PARTY now has or may hereinafter acquire, or accrue on account of, or in
any way growing out of, or incidental to the incident,[8]
whether the same be now known or realized.

 

                The Releasing Party expressly reserves
the right, and the parties mutually agree to carve out from the release and
settlement agreement Releasing Party’s claims, if any, to past medical expenses
incurred and directly associated with the incident.  The parties further agree
to carve out any and all future treatment for injuries directly associated with
the incident that are reasonably and medically necessary to treat the injuries
provided that the Released Party is informed of the treatment in advance, and
that the parties agree upon the chosen course of treatment.

 

 

            Certainty of Essential
Contract Terms, Agreement to Agree in the Future, and         Existence
of a Condition Precedent        

            A contract
must be sufficiently definite in its terms so that a court can understand what
the promissor undertook.  T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 221 (Tex. 1992).  If an alleged agreement is so indefinite as
to make it impossible for a court to fix the legal obligations and liabilities
of the parties, it cannot constitute an enforceable contract.  Engelman
Irrigation Dist. v. Shields Bros., 960 S.W.2d 343, 352 (Tex. App.–Corpus
Christi 1997), pet. denied per curiam, 989 S.W.2d 360 (Tex. 1998).  In
order for a court to enforce a contract, the parties must agree to the material
terms of the contract.  T.O. Stanley Boot, 847 S.W.2d at 221. 

            Similarly,
a contract providing for an agreement to be negotiated in the future is void.  See
Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121, 133–34 (Tex.
App.–Waco 2005, pet. denied).  The parties, however, may agree on some terms
sufficient to create a contract, leaving other provisions for later negotiation
so long as those terms are not material or essential.  Id. at
134.  However, those terms left for future negotiation are not part of the
enforceable portion of the contract.  See Killion v. Lanehart,
154 S.W.3d 183, 189 (Tex. App.–Amarillo 2004, pet. denied).

            Ordinarily,
time is not of the essence of a contract, and failure to perform on the exact
date agreed upon is not such a breach that justifies a cancellation.  Laredo
Hides Co., Inc. v. H & H Meat Products Co., Inc., 513 S.W.2d 210,
216 (Tex.  Civ.  App.–Corpus Christi 1974, writ ref’d n.r.e.). In order to make
time of the essence of a contract, it must so provide by express stipulation,
or there must be something in the nature of the subject matter, or connected
with the purpose, of the contract and the circumstances surrounding it which
makes it apparent that the parties intended that the contract be performed at
or within the time specified.  Id.  Any intention to make time of
the essence in the performance of a contract must be clearly manifested from a
consideration of the contract as a whole, and when that intention is not made
clear by the language in the contract itself, the surrounding circumstances may
be taken into consideration in determining that question.  Id. at
217.

Moreover,
conditions precedent to an obligation to perform under a contract are those
acts or events occurring subsequent to the making of a contract that must occur
before there is a right to immediate performance and before there is a breach
of a contractual duty.  See Beacon Nat=l Ins. Co. v. Glaze,
114 S.W.3d 1, 2 (Tex. App.–Tyler 2003, pet. denied) (citing Hohenberg
Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3
(Tex.1976)).  In order to determine whether a condition precedent exists, the
intention of the parties must be ascertained by looking to the contract as a
whole.  See Criswell v. European Crossroads Shopping Ctr., Ltd.,
792 S.W.2d 945, 948 (Tex. 1990).  In construing a contract, forfeiture by
finding a condition precedent is to be avoided when another reasonable reading
of the contract is possible, when the intent of the parties is doubtful, or
when a condition would impose an impossible or absurd result. Criswell,
792 S.W.2d at 948.

            Here,
the essence of the parties’ contract is Lopez’s agreeing to release Appellees
from liability in exchange for Appellees’ agreeing to pay Lopez five thousand
dollars in monthly increments of one hundred dollars.  Based on our reading of
the contract, there is no uncertainty concerning these terms, and, thus, there
exists a valid contract.  

            Appellees’
failure to timely pay Lopez’s medical bills as asserted by Lopez in his brief
does not serve to derail the greater purpose embodied in the parties’
agreement.  Appellees’ payment of Lopez’s medical bills was not part of their
consideration for Lopez’s agreement to release Appellees from liability. 
Rather, Lopez’s claims against Appellees for his medical bills, if any, were
“carved out” of the claims Lopez agreed to release.  In other words, Lopez did
not agree to release those claims, if any.  From our review of the contract as
a whole, we conclude that the payment of Lopez’s medical bills is not one of
Appellees’ obligations under the agreement, and is, therefore, not an essential
term that requires a timing component.  Nor is it a condition precedent to
Lopez’s obligation to release Appellees.

 
Furthermore, the summary judgment evidence supports that Appellees have
fulfilled their obligation to Lopez under the agreement by paying him one
hundred dollars monthly.  Indeed, Lopez makes no contention in his brief that
Appellees have failed to meet this obligation.  Furthermore, we conclude that the
obligation that Appellees pay Lopez monthly is sufficiently definite concerning
their time of performance.  Therefore, we hold that the essential terms of the
parties’ agreement were sufficiently definite and that the undisputed summary
judgment evidence supports that Appellees had met and continued to meet their
contractual obligations to Lopez.

 

 

Unconscionability

            Lopez
next argues that the agreement should not be enforced because it is
unconscionable and that fact issues exist concerning whether Hawley took
advantage of Lopez’s lack of knowledge, ability, experience, or capacity to a
grossly unfair degree.  

            Whether
a contract is unconscionable is a question of law for the court to decide.  Arthur's
Garage, Inc. v. Racal-Chubb Sec. Sys., Inc., 997 S.W.2d 803, 815 (Tex.
App.–Dallas 1999, no pet.).  “Unconscionability” has no precise legal
definition because it is not a concept but a determination to be made in light
of a variety of factors.  Id.  In general, the term
“unconscionability” describes a contract that is unfair because of its overall
one-sidedness or the gross one-sidedness of its terms.  Id. 
Although no single test exists to determine if a contract is unconscionable, we
begin with two questions:  (1) How did the parties arrive at the terms in
controversy; and (2) are there legitimate commercial reasons which justify the
inclusion of those terms?  Id. at 815–16.  The first question,
described as the procedural aspect of unconscionability, is concerned with
assent and focuses on the facts surrounding the bargaining process.  Id.
at 816.  The second question, described as the substantive aspect of
unconscionability, is concerned with the fairness of the resulting agreement.

By
his claim of unconscionability, Lopez seeks to set aside the release.  As such,
his claim of unconsionability is an affirmative defense on which he has the
burden of proof.  See Tex. R.
Civ. P. 94; Saenz v. Martinez, No. 04-07-00399, 2008 WL
4809217, at *8 (Tex. App.–San Antonio Nov. 5, 2008, no pet.) (mem. op.); Sweeney,
824 S.W.2d at 291.  If the party opposing a summary judgment relies on an
affirmative defense, he must come forward with summary judgment evidence
sufficient to raise an issue of fact on each element of the defense to avoid
summary judgment.  Brownlee v. Brownlee, 665 S.W.2d 111, 112
(Tex. 1984) (citing Clear Creek Basin Authority, 589 S.W.2d at
678–79).  

In
the case at hand, Lopez focuses heavily in his brief on legal authority he
claims supports his position that the release agreement was unconscionable. 
However, Lopez wholly fails to cite to any summary judgment evidence to support
his position.[9] 
In the absence of any guidance from Lopez where the evidence supporting his
unconscionability argument can be found, this court is not required to sift
through a voluminous summary judgment record in search of evidence, if any, to
support Lopez’s argument that a fact issue exists on this claim.  See Tex. R. App. P. 38.1(i); Aguilar
v. Morales, 162 S.W.3d 825, 838 (Tex. App.–El Paso 2005, pet. denied). 
We hold that as a result of his failure to properly cite to summary judgment
evidence in support of his position, Lopez has waived his unconscionability
argument.

Fair
Notice

            Lopez
further argues that the agreement fails to meet the fair notice requirements as
set forth in Dresser Indus., Inc. v. Page Petroleum, Inc.  The
fair notice requirement includes the conspicuousness requirement and the express
negligence doctrine.  See Dresser Indus., 853 S.W.2d at
508.  

            Conspicuousness

The
conspicuousness requirement mandates that the indemnity and release agreement
be noticeable to a reasonable person.  Id.  More specifically,
the supreme court in Dresser adopted the following definition of
“conspicuous” as set forth in subsection 1.201(b)(10) of the Texas Business and
Commerce Code:

 

“Conspicuous,” with reference to a term, means so
written, displayed, or presented that a reasonable person against which it is
to operate ought to have noticed it. Whether a term is “conspicuous” or not is
a decision for the court. Conspicuous terms include the following:

(A) a heading in capitals equal to or greater in size
than the surrounding text, or in contrasting type, font, or color to the
surrounding text of the same or lesser size; and

(B) language in the body of a record or display in
larger type than the surrounding text, or in contrasting type, font, or color
to the surrounding text of the same size, or set off from surrounding text of
the same size by symbols or other marks that call attention to the language.

 

Tex. Bus. & Com. Code Ann. §
1.201(b)(10) (Vernon 2009); Dresser Indus., 853 S.W.2d at
509–10.  

            In
the case at hand, the parties’ agreement was entitled “RELEASE AND
AGREEMENT.”  Just as it appears in this opinion, the title heading was in
all capital letters, was in bold typeface, and was underlined.  The title
appeared alone at the top of the document.  The document itself was four pages
in length and solely comprised the parties’ release and indemnity agreement. 
It was not buried or obfuscated by superfluous language or as part of a larger
agreement between the parties.  The subheadings “B. Release” and “C.
Indemnity” were in bold typeface as they appear in this opinion and
appeared on a separate line above the text pertaining to them.  The language
underlying the “Indemnity”[10]
section is particularly noteworthy since the entirety of the first paragraph of
that section is written in all capital letters.  This section begins, “FOR THE
SAME CONSIDERATION, THE RELEASING PARTY HEREBY AGREES NEVER TO BRING SUIT IN
ANY COURT AGAINST THE RELEASED PARTIES WITH RESPECT TO ANY CLAIM RELEASED
HEREIN.”  Based on our review of the agreement, we hold that it is written such
that a reasonable person against whom it is to operate ought to have noticed it.

            Express
Negligence Doctrine

We
next consider whether the agreement satisfied the express negligence doctrine. 
Under the express negligence doctrine, a party seeking indemnity for the
consequences of its own negligence must express that intent in specific terms
within the four corners of the contract.  Ethyl Corp. v. Daniel Const.
Co., 725 S.W.2d 705, 707–08 (Tex.1987); U.S. Rentals, Inc. v.
Mundy Serv. Corp., 901 S.W.2d 789, 791 (Tex. App.–Houston [14th Dist.]
1995, writ denied).  The test is whether the parties made it clear that their
intent is to exculpate a party for its own negligence.  See Atlantic
Richfield Co. v. Petroleum Pers., Inc. 768 S.W.2d 724, 726 (Tex. 1989).

In
the instant case, the agreement set forth Appellees’ intent in the first paragraph,
in pertinent part, as follows:

 

This is a release and settlement agreement between MIGUEL
LOPEZ and GARY HAWLEY and THE GARBAGE MAN, INC. (collectively
“the parties”)….  [T]his release and settlement agreement will act to release GARY
HAWLEY and THE GARBAGE MAN, INC. from any and all claims that may be
brought by MIGUEL LOPEZ for any and all injuries and damages, based on
claims of negligence, gross negligence, or otherwise, suffered or incurred by MIGUEL
LOPEZ on November 14, 2006 while performing work-place duties for THE
GARBAGE MAN, INC., specifically including, but not limited to injuries
sustained on November 14, 2006 to the left hand of MIGUEL LOPEZ.

 

 

Furthermore, in the section entitled “Release,” the agreement stated in
pertinent part, as follows:

 

MIGUEL LOPEZ,
his heirs, executors, administrators, estate, legal representatives, assigns[,]
and all others claiming under him (hereinafter referred to as “Releasing
Party”) does hereby fully release and forever discharge (except as expressly
provided below) GARY HAWLEY and THE GARBAGE MAN, INC. and affiliate and
subsidiary companies, corporations and entities, and all of their past, present
and future officers, directors, agents, servants, legal representatives,
employees, partners, predecessors, administrators and assigns (hereinafter
“Released Parties”) of and from any and all claims, rights, actions and causes
of action for property damage, personal injury, gross negligence, exemplary
damages, [and] loss of consortium….

 

 

Based on our review of the parties’ agreement, we hold that the terms of
the agreement make it clear that the parties’ intent was to exculpate Appellees
for their own negligence.

Actual
Knowledge

Of
course, we cannot overlook that the degree of conspicuousness or specificity of
terms is of limited application here because it is undisputed that Lopez did
not read or understand English.  Nonetheless, we have previously held that
Lopez is presumed as a matter of law to have read and understood the contract
unless he was prevented from doing so by trick or artifice.  See Tamez,
155 S.W.3d at 570.  As such, Lopez’s actual knowledge of the release negates
the common law fair notice requirements of conspicuousness and the express
negligence rule.  See Storage & Processors, Inc. v. Reyes,
134 S.W.3d 190, 192 (Tex. 2004) (“[I]f both contracting parties have actual
knowledge of the [agreement’s] terms, [it] can be enforced even if the fair
notice requirements were not satisfied[.]”); Dresser Indus., 853
S.W.2d at 508 n.2.

Fiduciary Relationship

            Lopez
next argues that this court should impose an informal fiduciary duty on
Appellees because of the “special relationship of trust and confidence” that
existed between Lopez and Appellees prior to and apart from the execution of
the agreement.  Specifically, Lopez argues that Appellees paid his medical
bills related to a previous work related injury he suffered in August 2005 and
he had no reason to suspect that Appellees would not pay for all of the medical
bills he incurred as a result of the injury he received on November 14, 2006.[11] 
As a result, Lopez contends that he relied upon what Hawley told him he would
receive in exchange for signing the agreement and signed the agreement based on
the trust he placed in Hawley.  Lopez further argues that this fiduciary
relationship existed based on his having known Hawley prior to their working
relationship and notes that Hawley encouraged him to learn English so that he
might be eligible for a promotion.

            It
is well settled that “not every relationship involving a high degree of trust
and confidence rises to the stature of a fiduciary relationship.”  Meyer
v. Cathey, 167 S.W.3d 327, 330 (Tex. 2005); Schlumberger Tech.
Corp. v. Swanson, 959 S.W.2d 171, 176–77 (Tex. 1997).  Where the
underlying facts are undisputed, determination of the existence, and breach, of
fiduciary duties are questions of law, exclusively within the province of the
court.  Cathey, 167 S.W.3d at 330; Nat'l Med. Enters. v.
Godbey, 924 S.W.2d 123, 147 (Tex. 1996).  In certain formal
relationships, such as an attorney-client or trustee relationship, a fiduciary
duty arises as a matter of law.  Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 199 (Tex. 2002); see also Ins.
Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998).  

We
also recognize the existence of an informal fiduciary duty that arises from a
moral, social, domestic, or purely personal relationship of trust and
confidence.  See Cathey, 167 S.W.3d at 331; Associated
Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 287 (Tex. 1998);
see also Schlumberger Tech. Corp., 959 S.W.2d at 176.  However,
in order to give full force to contracts, we do not create such a relationship
lightly.  Schlumberger Tech. Corp., 959 S.W.2d at 177.  To impose
an informal fiduciary duty in a business transaction, the special relationship
of trust and confidence must exist prior to, and apart from, the agreement made
the basis of the suit.  Cathey, 167 S.W.3d at 331.

            In Cathey,
the supreme court reversed the court of appeals’ holding that an informal
fiduciary relationship existed based on a business relationship.  See id.
at 333.  In that case, Meyer hired Cathey and (1) the two worked on real estate
development projects together for three years, (2) Cathey had a five percent
partnership interest with Meyer in one of the prior projects, (3) Cathey
trusted Meyer, and, (4) Cathey and Meyer were friends and frequent dining
partners.  See id. at 330–31.  Here, Lopez’s relationship with Hawley
is more attenuated than the relationship between Cathey and Meyer.  While Hawley
testified at his deposition that he knew Lopez “long before hiring him[,]”
there is no evidence concerning the degree of their relationship before Lopez
worked for Appellees.  Rather, Hawley testified that he knew Lopez because
Lopez’s children were in a youth group with which Hawley worked.  Moreover, the
summary judgment evidence does not demonstrate that the business relationship
between Lopez and Hawley was of any greater significance than the business
relationship between Meyer and Cathey.  The business relationship between Meyer
and Cathey involved the two working on real estate development projects
together as well as a partnership agreement between the two on one of the
projects.  Id. at 330.  Lopez worked for Appellees, but there is
no evidence that he and Hawley worked closely with one another.  Finally, the
fact that Lopez trusted Hawley simply does not transform their
employer-employee relationship into a fiduciary relationship.  Id.
at 331.  Therefore, we conclude that the summary judgment evidence does not
support that Hawley or any of the other Appellees owed Lopez a fiduciary duty. 
Id.

Fraudulent
Inducement

Finally,
Lopez argues that he was fraudulently induced to execute the agreement.  Fraud
is an affirmative defense to a party’s failure to perform its obligation under
a contract.  See Tex. R. Civ. P.
94; see also Sweeney, 824 S.W.2d at 291; Deer Creek Ltd. v.
North Am. Mortg. Co., 792 S.W.2d 198, 201 (Tex. App.–Dallas 1990, no
writ) (claim that release may be set aside if fraudulently induced is
affirmative defense in nature of confession and avoidance).  Accordingly, Lopez
was required to come forward with summary judgment evidence sufficient to raise
an issue of fact on each element of the defense to avoid summary judgment.  See
Brownlee, 665 S.W.2d at 112.  

Once
again, similar to his briefing of the issue of unconscionability, Lopez fails
to cite to any summary judgment evidence to support his contentions that he was
fraudulently induced to execute the agreement.  We iterate that in the absence
of any guidance from Lopez where the evidence supporting his fraudulent
inducement argument can be found, this court is not required to sift through a
voluminous summary judgment record in search of evidence, if any, to support
Lopez’s argument that a fact issue exists on this claim.  See Tex. R. App. P. 38.1(i); Morales,
162 S.W.3d at 838.  We hold that as a result of his failure to properly cite to
summary judgment evidence in support of his position, Lopez has waived his
fraudulent inducement argument.

Summation

            Based
on our review of the summary judgment record, we conclude the undisputed
summary judgment evidence supports that Lopez signed the agreement and that his
negligence based claims are within the subject matter of the release contained
therein.  We further conclude that Appellees’ motion demonstrated that, based
on this undisputed evidence, they were entitled to judgment as a matter of
law.  Lopez’s several arguments on appeal that the release agreement should be
set aside have either been waived or fail as a matter of law.  Accordingly, we
hold that the trial court did not err in granting Appellees’ Third Amended Motion
for Summary Judgment.  Lopez’s second issue is overruled.  To the extent that
any of Lopez’s objections to Appellees’ motion for summary judgment were
dependent on our resolution of Lopez’s second issue, we hold that the trial
court did not abuse its discretion in overruling those objections.

Lopez’s No Evidence Motion for Summary
Judgment

In
his third issue, Lopez argues that the trial court erroneously denied his no
evidence motion for summary judgment.  After adequate time for discovery, a
party without presenting summary judgment evidence may also move for summary
judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden
of proof at trial.  Tex. R. Civ. P.
166a(i).  The motion must state the elements as to which there is no evidence. 
Id.  Once a no evidence motion has been filed in accordance with
rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that
raises a fact issue on the challenged evidence.  See Macias v.
Fiesta Mart, Inc., 988 S.W.2d 316, 316–17 (Tex. App.–Houston [14th
Dist.] 1999, no pet.).    

In
the case at hand, Lopez filed a purported no evidence motion for summary
judgment arguing that Appellees had no evidence to support their affirmative
defense of release in light of the requirements of Texas Labor Code, subsections
406.033(f) and (g).  Lopez specifically acknowledges the existence of the
release in his motion, but argues extensively that the motion should be set
aside for its failure to comply with subsections 406.033(f) and (g).  Rule
166a(i) entitles Lopez to move for a no evidence motion for summary judgment on
the essential elements of a claim or defense on which Appellees would have the
burden of proof at trial.  See Tex.
R. Civ. P. 166a(i).  Here, if we construe Lopez’s motion only under rule
166a(i), we must hold that the trial court properly denied his motion since
Lopez, not Appellees, bore the burden of proving that the release should be set
aside.  See Sweeney, 824 S.W.2d at 291.  However, it is clear
from the substance of the motion that it should, in the interest of justice, be
construed as both a no evidence and a traditional motion for summary judgment. 
See, e.g., Binur v. Jacobo, 135 S.W.3d 646, 650 (Tex. 2004).

When
parties file cross motions for summary judgment, each party in support of its
own motion necessarily takes the position that there is no genuine issue of
fact in the case and that it is entitled to judgment as a matter of law.  Ackermann
v. Vordenbaum, 403 S.W.2d 362, 364 (Tex.1966); Lambrecht &
Associates, Inc. v. State Farm Lloyds, 119 S.W.3d 16, 20 (Tex.
App.–Tyler 2003, no pet.).  If one motion is granted and the other denied, we
must review the summary judgment evidence presented by both sides and determine
all questions presented.  Commissioners Court of Titus County v. Agan,
940 S.W.2d 77, 81 (Tex. 1997).  In so doing, we first review the order granting
summary judgment, and if we determine the order was erroneous, we review the
trial court's action in overruling the denied motion.  Lambrecht,
119 S.W.3d at 20.  We may then either affirm the judgment or reverse and render
the judgment the trial court should have rendered, including one that denies
both motions.  Id.  We may also render judgment for the other
movant, provided that both parties sought final judgment relief in their cross
motions for summary judgment.  Id.

In
the case at hand, many of the requirements set forth above have already been
addressed in our discussion of Appellees’ motion for summary judgment.  In the
interest of clarity and to the extent that there exist minor variances between
our discussion of Lopez’s common law defenses to release and the requirements
of subsections 406.033(f) and (g), we will address each subsection in turn and
refer back to our discussion of Lopez’s second issue where appropriate.

Subsections
406.033(f) and (g) state as follows:

 

(f) A cause of action described by Subsection (a) may
not be waived by an employee after the employee's injury unless:

(1) the employee voluntarily enters into the waiver
with knowledge of the waiver's effect;

(2) the waiver is entered into not earlier than the
10th business day after the date of the initial report of injury;

(3) the employee, before signing the waiver, has received
a medical evaluation from a nonemergency care doctor; and

(4) the waiver is in a writing under which the true
intent of the parties is specifically stated in the document.

 

(g) The waiver provisions required under Subsection
(f) must be conspicuous and appear on the face of the agreement. To be
conspicuous, the waiver provisions must appear in a type larger than the type
contained in the body of the agreement or in contrasting colors.

 

Tex. Labor Code Ann. § 406.033(f), (g)
(Vernon 2006).

The
Employee Voluntarily Enters into the Waiver with Knowledge of the Waiver's
Effect

As
set forth previously, the summary judgment evidence indicates that Meeks
provided translation services to Lopez in conjunction with his execution of the
agreement.  Meeks testified that she gave Lopez a literal translation of the
document.  Section D of the agreement states as follows:

 

The undersigned further states that he has both read
the foregoing Release and Agreement and has had the Release and Agreement read
to him by a duly authorized and mutually-agreed upon interpreter, and knows
the contents thereof, that he is aware of the legal consequences of the
execution thereof and that he agrees to execute this Release and Agreement of
his own free will.

 

            

(emphasis
added).  Thus, based on the plain language of the parties’ agreement,  Lopez
knew the contents of the agreement, understood the consequences of his
execution of the agreement, and made the agreement of his own free will.  As
before, we conclude that even though English was not Lopez’s first language, based
on the summary judgment evidence, he is presumed as a matter of law to have
read and understood the contract unless he was prevented from doing so by trick
or artifice.  See Tamez, 155 S.W.3d at 570.  We conclude that subsection
406.033(f)(1) is supported by the undisputed summary judgment evidence.

Timing of
Agreement Compared to Date of Initial Report of Injury

            The
summary judgment evidence reflects that Lopez’s injury occurred on November 14,
2006.  Lopez testified in his deposition that he reported the injury that same
day.  Lopez executed the agreement on May 10, 2007.  Thus, we conclude that subsection
406.033(f)(2) is supported by the undisputed summary judgment evidence.

Receipt of
a Medical Evaluation From Nonemergency Care Doctor

            Lopez’s
deposition testimony reflects that he spent eight days in the hospital
following the accident and was seen by a doctor after his release from the
hospital.  We conclude that subsection 406.033(f)(3) is supported by the undisputed
summary judgment evidence.

Release
Written and States Parties’ True Intent

The
release agreement is in writing.  Furthermore, as set forth in our discussion
of Lopez’s second issue, the agreement set forth Appellees’ intent in the first
paragraph, in pertinent part, as follows:

 

This is a release and settlement agreement between MIGUEL
LOPEZ and GARY HAWLEY and THE GARBAGE MAN, INC. (collectively
“the parties”)….  [T]his release and settlement agreement will act to release GARY
HAWLEY and THE GARBAGE MAN, INC. from any and all claims that may be
brought by MIGUEL LOPEZ for any and all injuries and damages, based on
claims of negligence, gross negligence, or otherwise, suffered or incurred by MIGUEL
LOPEZ on November 14, 2006 while performing work-place duties for THE
GARBAGE MAN, INC., specifically including, but not limited to injuries
sustained on November 14, 2006 to the left hand of MIGUEL LOPEZ.

 

 

Furthermore, in the section entitled “Release,” the agreement stated in
pertinent part, as follows:

 

MIGUEL LOPEZ,
his heirs, executors, administrators, estate, legal representatives, assigns[,]
and all others claiming under him (hereinafter referred to as “Releasing
Party”) does hereby fully release and forever discharge (except as expressly
provided below) GARY HAWLEY and THE GARBAGE MAN, INC. and affiliate and
subsidiary companies, corporations and entities, and all of their past, present
and future officers, directors, agents, servants, legal representatives,
employees, partners, predecessors, administrators and assigns (hereinafter
“Released Parties”) of and from any and all claims, rights, actions and causes
of action for property damage, personal injury, gross negligence, exemplary
damages, [and] loss of consortium….

 

 

We conclude that
subsection 406.033(f)(4) is supported by the undisputed summary judgment
evidence.

Conspicuousness

            We
have previously held that the release was sufficiently conspicuous under Texas
Business and Commerce Code, subsection 1.201(b)(10).  Considering the release
pursuant to subsection 406.003(g), we note that the release provisions appear
on the face of the agreement.  Furthermore, the waiver provisions appear in a
type larger than the type contained in the body of the agreement.  As set forth
in our consideration of Lopez’s second issue, the agreement contains the
following language in all capital letters:  “FOR THE SAME CONSIDERATION, THE
RELEASING PARTY HEREBY AGREES NEVER TO BRING SUIT IN ANY COURT AGAINST THE
RELEASED PARTIES WITH RESPECT TO ANY CLAIM RELEASED HEREIN.”  Based on our
review of the agreement, this language properly embodies the “waiver provisions”
set forth in the agreement and appears to this court to be printed in larger
type than that contained in the body of the agreement.  Therefore, we conclude
that subsection 406.033(g) is supported by the undisputed summary judgment
evidence.

Summation

Because
we have concluded that subsections 406.033(f) and (g) are supported by the
undisputed summary judgment evidence, we hold that the trial court did not err
in denying Lopez’s motion for summary judgment.  Lopez’s third issue is
overruled.

 

Brenda Hawley’s No Evidence Motion for Summary
Judgment

            In
his fourth issue, Lopez argues that the trial court erred in granting Brenda
Hawley’s no evidence motion for summary judgment.  The record reflects that the
trial court signed its order granting summary judgment in Brenda Hawley’s favor
on May 9, 2008.  The trial court’s order further stated that “Plaintiff’s
causes of action as against Defendant Brenda Hawley are ordered severed from
the case in chief and are therefore dismissed
with prejudice as to the refiling of the same.”

            When
a severance order takes effect, the appellate timetable runs from the signing
date of the order that made the judgment severed final and appealable.  See Martinez
v. Humble Sand & Gravel, Inc., 875 S.W.2d 311, 313 (Tex. 1994).  An
order severing part of a lawsuit is effective when it is signed.  See McRoberts
v. Ryals, 863 S.W.2d 450, 452–53 (Tex. 1993).  Thus, to timely appeal
the trial court’s grant of summary judgment in Brenda Hawley’s favor, Lopez was
required to file a notice of appeal on or before June 9, 2008.[12]  Lopez filed his notice of
appeal on or about September 24, 2008.  Therefore, Lopez did not timely appeal
the trial court’s order granting summary judgment in Brenda Hawley’s favor.  See
Tex. R. App. P. 26.1 
Accordingly, we are without jurisdiction to consider Lopez’s fourth issue.  See
Tex. R. App. P. 25.1.

 

Conclusion

We
lack jurisdiction to consider Lopez’s fourth issue.  Accordingly, we dismiss
Lopez’s appeal for want of jurisdiction insofar as it pertains to
the trial court’s summary judgment entered in favor of Brenda Hawley.  Having
overruled Lopez’s first, second, and third issues, we affirm the
trial court’s judgment.  

 

James T.
Worthen

                                                                              
                          Chief Justice

 

 

 

Opinion delivered March 31, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

(PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












[1]
The record reflects that, at some point in time, Meeks advised Lopez to consult
an attorney before signing the agreement. 

 





[2]
Only Lopez, Gary Hawley, and The Garbage Man, Inc. are specifically named as
parties to the release agreement.  Accordingly, any reference to “Appellees” as
parties to the agreement does not necessarily include an unnamed party.  Lopez
has not argued that Appellees Brenda Hawley, David Munoz, Anthony Johnson, or
Loretta Ayres are not parties to the release by their status as employees of
The Garbage Man, Inc.  However, we note that the release makes reference to
general categories of individuals that are bound by the release.

 





[3]
Lopez notes in his brief that no new cause number was assigned to his severed
causes of action against Brenda Hawley. 





 

[4]
When referring to Appellees’ Third Amended Motion for Summary Judgment, the
term “Appellees” does not include Brenda Hawley.  





[5]
Exhibit “I” is not necessary to or relied on in support of our analysis of
Lopez’s second issue.





[6]
Absent proof of mental incapacity, a person who signs a contract is presumed to
have read and understood the contract, unless he was prevented from doing so by
trick or artifice.  See Tamez, 155 S.W.3d at 570 n.3. 





 

[7]
Later in his brief, Lopez contends that Appellees fraudulently induced him to
enter into the agreement.  We recognize that the presumption that Lopez read
and understood the contract could be rebutted based on our resolution of his
fraud contentions.  





[8]
The “incident” was previously defined as “injuries sustained by [Lopez] to his
left hand on November 14, 2006 while working for the Garbage Man, Inc.” 





[9]
The statement of facts in Lopez’s brief does not make mention of any details
pertaining to the parties’ negotiations leading up to the release agreement. 
Thus, we cannot rely on the facts and record citations set forth therein for
guidance.  





[10]
We recognize that Lopez’s agreement to indemnify Appellees is not at issue. 
However, the language in the section is relevant to the issue of release. 





                [11]
We note that Lopez has not argued on appeal that Appellees failed to pay his
medical bills.





[12]
Lopez filed a motion to reconsider pertaining to Brenda Hawley’s no evidence
motion on July 31, 2008.  Because this motion was not timely, see Tex. R. Civ. P. 329b(a), it did not
extend the appellate timetables.  In any event, Lopez’s notice of appeal was
filed more than ninety days after the trial court signed its order granting
summary judgment in Brenda Hawley’s favor and severing Lopez’s cause of action
against her.  See Tex. R. App. P.
26.1(a).