# NO. 12-07-00139-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PALESTINE HERALD-PRESS CO.,* *NEWSPAPER HOLDINGS, INC., AND* *SCOTT TYLER,* *APPELLANTS* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *MARK ZIMMER,* *APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

### *OPINION*

Palestine Herald-Press Co., NewsPaper Holdings, Inc, and Scott Tyler (collectively "Appellants") appeal the trial court's denial of their traditional and no evidence motions for summary judgment in favor of Appellee Mark Zimmer. Appellants raise twelve issues on appeal. We reverse and render.

### BACKGROUND

Zimmer is the defensive coordinator and assistant coach for the Jacksonville High School football team of Jacksonville, Texas. Jacksonville High School and Palestine High School of Palestine, Texas are public high schools in neighboring counties and have a longstanding football rivalry.

On September 22, 2006, the two teams competed against one another in an annual rivalry game held in Palestine, Texas. The game was hard fought. As the last minute of game play began to elapse, the Jacksonville team led by only two points. The Palestine team drove the ball into the Jacksonville team's territory and set up for a field goal attempt that would assure their victory. But the Jacksonville team doused its opponent's hopes when it blocked the kick.

Jacksonville High School's players, fans, and coaches erupted with excitement. The exuberance Zimmer had exhibited during the game reached a crescendo as time expired. As the Jacksonville players and coaches celebrated, Zimmer ran onto the field with his right arm overhead. Zimmer leapt into one of his players' arms near the middle of the field between the twenty and thirty yard lines. As the player released Zimmer from the embrace, Zimmer, who was still in the immediate vicinity of the celebrating Jacksonville players, turned generally toward the Palestine team's sideline as he pumped his right fist in the air once. Zimmer then raised both fists to the side of his head, and abruptly thrust his arms downward to his hips three times while slightly bending his knees and sidestepping toward the thirty yard line. Zimmer was yelling with elevated excitement as he motioned. Zimmer then turned toward his players, one of whom immediately bumped his shoulder pad into Zimmer's shoulder, causing Zimmer, who was still spiritedly shouting, to turn once again toward the Palestine sideline briefly before he walked toward the Jacksonville sidelines, relatively subdued, with the Palestine players.[1]

Among those who observed Zimmer's conduct was Scott Tyler, a sports editor for the Palestine Herald-Press newspaper. Tyler was standing on the Palestine team's sideline near the thirty-five yard line at the time. Thereafter, Tyler wrote an article that appeared in the September 24, 2006 edition of the Palestine Herald in "From the Cheap Seats," Tyler's weekly editorial column. Tyler's article entitled "Sportsmanship comes first" reads as follows:

> In high school football, winning and losing is not always the most important factor.
>
> OK, before I get run out of town for that statement, there is some truth, so just hold on and listen.
>
> At the high school level, while winning football games is nice, when it comes down to the bottom line, the most important thing that needs to come out of a high school football game is not winning but sportsmanship.
>
> Maybe I have been fortunate with covering Palestine for four years. Starting with Jeff Harrell and now with Glen Tunstall, the Palestine coaches have strived to make sure they and their players demonstrate the best sportsmanship possible.
>
> Win or lose, Palestine has shown what sportsmanship means. Yes, I have seen the Palestine

---

[1] Zimmer's actions germane to this appeal lasted approximately seven seconds and were captured by video cameras that were recording the game. This video evidence was part of the summary judgment record and the record on appeal.

2

players and coaches celebrate with a close victory, but what else is expected. And even with losses, they still keep their heads up while shaking hands with the other team.

Last week, when Palestine was at Henderson, one of the chain gang members for Henderson made a comment of how pleasant the Palestine sideline was. Just another example of the Wildcats' good sportsmanship.

And before I get the phone calls and e-mails telling me that Palestine runs up the score, don't even try. When Palestine gets a big lead, all the second- and third-string players are in the game, but what do you expect they do, just sit on the ball?

However, there have been instances through the years where the sportsmanship demonstrated on the Palestine sideline has not been duplicated on the other sideline.

I have heard and seen many things over from across the sidelines, including bad language, inappropriate gestures and name calling toward both their own players and the opposing team's players.

However, what I saw Friday night was the worse [sic] yet.

In a great game between Palestine and Jacksonville at Wildcat Stadium, that went to the end, the Indians prevailed with a 19–17 comeback win.

When Palestine missed a long field goal attempt at the end of the game, there was celebration on the Jacksonville sideline, which is understandable.

Palestine had beaten Jacksonville the year before and the Indians had to come back in the fourth quarter to win Friday night. So go ahead, jump up and down, enjoy the win.

However[,] while the Jacksonville players and coaches celebrated the win, the Jacksonville defensive coordinator, Mark Zimmer, stood at mid-field, facing the Palestine sideline and started making an obscene gesture with his arms.

This is ABSOLUTELY uncalled for! After a hard-fought contest by both teams for 48 minutes, there is no place for this in the game, and for a coach to do this is beyond any words I can think of.

After what I witnessed, I have no respect for Jacksonville and it is because of one coach. He not only put a black mark on the Jacksonville football team[,] but also Jacksonville High School and the city of Jacksonville.

This coach should feel embarrassed and ashamed of what he did and how he acted. This is not acceptable behavior by anyone on the football field and for it to be a coach makes it even worse.

Zimmer owes the Palestine team, the Wildcat fans[,] and the city of Palestine an apology for his actions.

There is no place for this in sports.

Within weeks of the publication of Tyler's article, Zimmer filed suit for defamation against Appellants. On January 22, 2006, Appellants filed both traditional and no evidence motions for

3

summary judgment, to which Zimmer responded.  On April 3, 2007, the trial court denied Appellants' motions for summary judgment.  This interlocutory appeal followed.[2]

## STANDARD OF REVIEW AND GOVERNING LAW

The standard for reviewing summary judgment is the same for defamation cases as for other types of cases.  *See Simmons v. Ware*, 920 S.W.2d 438, 443 (Tex. App.–Amarillo 1996, no writ) (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989)).  In reviewing a traditional motion for summary judgment,[3] we must apply the standards established in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), which are as follows:

> (1)     The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> (2)     In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the [nonmovant] will be taken as true.
>
> (3)     Every reasonable inference must be indulged in favor of the [nonmovant] and any doubts resolved in its favor.

*Nixon*, 690 S.W.2d at 548–49; *see May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.).  A defendant moving for summary judgment must either negate at least one essential element of the nonmovant's cause of action, or prove all essential elements of an affirmative defense.  *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).  We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952).  The only question is whether or not an issue of material fact is presented.  *See* TEX. R. CIV. P. 166a(c).  Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment.  *See, e.g., City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex. 1979).  Summary

---

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(6) (Vernon Supp. 2007).

[3] *See* TEX. R. CIV. P. 166a(c).

judgment should be affirmed on appeal if any of the grounds presented in the motion are meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Furthermore, after adequate time for discovery, a party without presenting summary judgment evidence may also move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 316–17 (Tex. App.–Houston [14th Dist.] 1999, no pet.). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *See Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

To prove a cause of action for defamation, a plaintiff must prove that (1) the defendant published a statement of fact, (2) the statement was defamatory, (3) the statement was false, (4) the defendant acted negligently in publishing the false and defamatory statement, and (5) the plaintiff suffered damages as a result. *See Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 382 (Tex. App.–Houston [1 Dist.] 2005, no pet.) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 2005).

## VERIFIABLE STATEMENT OF FACT

In their second issue, Appellants argue that the trial court improperly denied their no evidence motion for summary judgment because there was no evidence that the statements in Tyler's editorial of which Zimmer complained were objectively verifiable statements of fact.

In *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002), the Texas Supreme Court adopted the test used by the U.S. Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990), for determining whether a statement is actionable in defamation. For a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable. *Milkovich*, 497 U.S. at 19, 110 S. Ct. at 2706; *Bentley*, 94 S.W.3d at 580. This test supplants a former analysis that emphasized a distinction between statements of fact and statements of opinion. *See Bentley*, 94 S.W.3d at 580–81. In *Milkovich*, the Supreme Court stated that the First Amendment does not mandate an inquiry into whether a statement is opinion or fact because the existing constitutional doctrine adequately secures freedom of expression without the need to create an artificial dichotomy between the two. *See Milkovich*, 497 U.S. at 19, 110 S. Ct. at 2706. Under the test set out in *Milkovich* and adopted in *Bentley*, an opinion, like any other statement, can be actionable in defamation if it expressly or impliedly asserts facts that can be objectively verified. *See Milkovich*, 497 U.S. at 22, 110 S. Ct. at 2707; *Bentley*, 94 S.W.3d at 580.

For example, when a speaker says, "In my opinion, Jones is a liar," he implies knowledge of facts that lead to the conclusion that Jones told an untruth. *See Milkovich*, 497 U.S. at 18, 110 S. Ct. at 2705–06. When the speaker states the facts upon which he bases his opinion, and those facts are either incorrect or incomplete, or his assessment of them is erroneous, the statement may still imply a false assertion of fact. *Id.*, 497 U.S. at 18–19, 110 S. Ct. at 2706. Simply couching a statement in terms of opinion does not dispel such an implication. *Id.* 497 U.S. at 19, 110 S. Ct. at 2706.

Whether a publication is an actionable statement of fact is a question of law. *See Bentley*, 94 S.W.3d at 580. To make this determination, we must look at the entire context in which the statement was made. *Id.* at 581.

In his petition, Zimmer alleged that Tyler's statements in the article were defamatory as follows:

> Defendant Tyler libels Plaintiff by printing false statements. Specifically, he calls Plaintiff out by name. He claims that Plaintiff "stood at midfield, facing the Palestine sideline and started making an obscene gesture with his arms." Tyler alleges that what he saw Friday night was the "worse" [sic] behavior he has seen by a football coach. He states that Plaintiff's conduct was worse than "bad language, inappropriate gestures[,] and name calling toward ... players and the opposing team's players." Tyler then publically reprimands Plaintiff and states that Plaintiff's conduct is

6

"ABSOLUTELY uncalled for!" Tyler says that Plaintiff put a "black mark" on the Jacksonville football team, the Jacksonville High School, and the city of Jacksonville. Tyler asserts that Plaintiff "should feel embarrassed and ashamed of what he did and how he acted." He states that Plaintiff "owes the Palestine team, the Wildcat fans[,] and the city of Palestine an apology for his actions." Tyler then ends the article by saying, "There is no place for this in sports."

We have reviewed the statements in the article of which Zimmer complains in the context of the entirety of Tyler's article. We agree with Appellants' assertion that the article generally concerns the issue of sportsmanship and conclude that none of Tyler's statements, with one possible exception, are remotely capable of being objectively verified.

Zimmer's action, which Tyler describes in his article as his having made an "obscene gesture with his arms," is the express impetus underlying Tyler's writing the article. All of the remaining statements about which Zimmer complains amount to no more than attempts by Tyler to quantify the gravity of Zimmer's behavior. That such an act is the worst thing Tyler has observed, even when citing examples of other bad behavior he has observed, is, nonetheless, an entirely subjective statement. So, too, are Tyler's comments that Zimmer's conduct was "uncalled for," "has no place in sports," or put a "black mark" on Jacksonville, its football team, and its high school. Moreover, Tyler's statements that Zimmer "should feel embarrassed and ashamed of what he did" and that he "owes the Palestine team, [its] fans, and the city of Palestine an apology" amount to little more than Tyler's expression of hope that Zimmer will show contrition. We iterate that when the speaker states the facts upon which he bases his opinion, and those facts are either incorrect or incomplete, or his assessment of them is erroneous, the statement may still imply a false assertion of fact. *See Milkovich*, 497 U.S. at 18–19, 110 S.Ct. at 2706. Such a scenario as described in *Milkovich* resembles closely the bulk of Tyler's supporting statements in his article. Thus, we conclude that the answer to the question of whether these supporting statements are actionable is dependent upon whether the statement that Zimmer "made an obscene gesture" is an objectively verifiable fact.

Appellants contend that the statement that Zimmer made an "obscene gesture with his arms" is a subjective description of Zimmer's gestures. Appellants further argue that there can be no word that is more subjective and unverifiable than the word "obscene." Moreover, Appellants note, as an example, that a "thumbs up hand gesture" can be a symbol of support to some and an obscene

7

gesture to others.[4]

Appellants rely heavily on ***Falk & Mayfield, L.L.P. v. Molzan***, 974 S.W.2d 821 (Tex. App–Houston [14th Dist.] 1998, pet. denied) in support of their position. In ***Molzan***, the owner of Ruggles Grill in Houston, Texas was sued by a patron after her car, which she left in the care of a valet parking service, became disabled and was subsequently vandalized and burglarized. ***Id.*** at 822. The patron was represented by the law firm of Falk & Mayfield, L.L.P. ***Id.*** After an unsuccessful attempt to mediate the suit, the owner of Ruggles Grill placed a portable sign in front of his business, which read: "ASK ME ABOUT LAWSUIT ABUSE & THE LAW FIRM OF FALK & MAYFIELD ATTORNEY ANGELA MOGAN MCALLISTER DETAILS INSIDE." ***Id.*** Falk & Mayfield, L.L.P.[5] sued Molzan for defamation, but later nonsuited their case. ***Id.*** at 823. Molzan filed a motion to reinstate the suit for the purpose of seeking sanctions against Falk & Mayfield, L.L.P., which the trial court ultimately awarded him. ***Id.*** Falk & Mayfield, L.L.P. appealed the sanctions order. ***Id.*** On appeal, one issue concerned whether the sanctions award was just, and thus, whether the plaintiffs' pleadings were groundless and filed in bad faith for the purpose of harassment. ***Id.*** at 823–24. In concluding that the pleadings were, in fact, groundless, the court of appeals stated as follows:

> An essential element of libel "is that the alleged defamatory statement be a statement of fact rather than opinion." [citation omitted]. Here, the meaning of the sign is somewhat ambiguous, but at most it accused appellants of "lawsuit abuse." To say that one has engaged in lawsuit abuse is to accuse him of legally manipulating the civil justice system to gain an unfair advantage in a personal or commercial dispute. It is an individual judgment that rests solely in the eye of the beholder. Admittedly, the accusation is derogatory and disparaging, but this is no different than saying that one is ugly, scurrilous, or disgusting.[6] The term "lawsuit abuse" does not, in its common usage, convey a verifiable fact, but is, by its nature, somewhat indefinite and ambiguous. Because it is a loose and figurative term employed as metaphor or hyperbole, it is an expression of opinion which is absolutely protected by the First Amendment of the United States Constitution and Section 8, article I, of the Texas Constitution. [citations omitted].

---

[4] Citing Roger E. Axtell, Gestures: The Do's and Taboos of Body Language around the World (1991); *see also generally* Betty J. Bäuml and Franz H. Bäuml, A Dictionary of Gestures (1975).

[5] There were other individual plaintiffs in this suit. The plaintiffs are referred to collectively as "Falk & Mayfield, L.L.P."

[6] A statement may be false, abusive, unpleasant, and objectionable without being defamatory. *See **Schauer v. Memorial Care Sys.***, 856 S.W.2d 437, 446 (Tex. App.–Houston [1st Dist.] 1993, no writ).

*Id.* at 824.

Adopting the rationale set forth in *Molzan*, we next consider whether the word "obscene" is, by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder or is otherwise a loose and figurative term. *See id.* As traditionally used in the English language, "obscene" is defined as "disgusting to the senses, grossly repugnant to the generally accepted notions of what is appropriate, offensive or revolting as countering or violating some ideal or principle." *Miller v. California*, 413 U.S. 15, 18, 93 S. Ct. 2607, 2612, 37 L. Ed. 2d 419 n.2 (1972); *see also* THE AMERICAN HERITAGE DICTIONARY, 858 (2nd College ed. 1982); BLACK'S LAW DICTIONARY, 1076 (6th ed. 1990). Particularly, with regard to criminal obscenity statutes, a state may chose to define an obscenity offense in terms of contemporary community standards without specification or may choose to define standards in more precise geographic terms. *See Jenkins v. Georgia*, 418 U.S. 143, 157, 94 S. Ct. 2750, 2753, 41 L. Ed. 2d 642 (1974). Yet, the definition of obscenity is arguably dictated on a personal rather than a geographic level. As Justice Stewart famously stated when attempting to define the elusive concept,[7] "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683, 12 L. Ed. 2d 793 (1964) (Stewart, J. concurring).

In the case at hand, Tyler's statement that the gesture Zimmer made with his arms was "obscene," without further description, is subjective and indefinite. The answer to the question of whether something is "obscene" varies from state to state, from community to community, and from person to person. *See Miller*, 413 U.S. at 37, 93 S. Ct. at 2622; *Jenkins*, 418 U.S. 143, 94 S. Ct. at 2753; *Jacobellis*, 378 U.S. at 197, 84 S. Ct. at 1683 (Stewart, J. concurring). It is an individual judgment that rests solely in the eye of the beholder and, as such, is not an objectively verifiable statement of fact. Therefore, we hold that the trial court erred in denying Appellants' no evidence motion for summary judgment because there was no evidence in the summary judgment record that the statements in Tyler's article of which Zimmer complained were objectively verifiable statements

---

[7] Although Justice Stewart was describing "pornography," *see Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683, 12 L. Ed. 2d 793 (1964) (Stewart, J. concurring), pornographic material, which is obscene, forms a subgroup of all obscene expression, but not the whole, as the word obscene is used in our language. *See Miller*, 413 U.S. at 18, 93 S. Ct. at 2612 n.2.

of fact.  Appellants' second issue is sustained.[8]

## DISPOSITION

Having sustained Appellants' second issue, we *reverse* the trial court's judgment and *render* judgment that Zimmer take nothing.


    **BRIAN HOYLE**
Justice


Opinion delivered June 25, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)


---

[8] Inasmuch as Appellants' second issue is dispositive of this appeal, we do not reach Appellants' remaining issues.  *See* TEX. R. APP. P. 47.1.