**Opinion issued August 27, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00596-CV

————————————

**KRIS BENSON AND VICKIE BENSON, Appellants**

**V.**

**SHERILYN GUERRERO, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-23181**

---

# O P I N I O N

In this accelerated appeal,[1] appellants, Kris Benson ("Kris") and Vickie

Benson ("Vickie") (collectively, the "Bensons"), challenge the trial court's order

granting the motion to dismiss their defamation claims against appellee, Sherilyn

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008.

Guerrero, under the Texas Citizens Participation Act ("TCPA").[2] In four issues, the Bensons contend that the trial court erred in granting Guerrero's motion to dismiss.

We affirm in part, reverse in part, and remand.

## Background

In their first amended petition, the Bensons alleged that they were "private figures who [we]re married to one another." Vickie was Guerrero's mother, and Kris was Guerrero's stepfather.

According to the Bensons, on or about April 2, 2023, Guerrero "published a video" on "TikTok."[3] The Bensons alleged that in the video, Guerrero "made numerous defamatory statements about [them]," including statements that Guerrero "and others were sexually assaulted by [Kris] while on a cruise in 2020," Vickie "knew that [Guerrero] had been sexually assaulted but did not care," Vickie characterized the "sexual[] assault[] as a mistake," Vickie told Guerrero that it "wasn't her problem" that Guerrero had been sexually assaulted, Vickie "failed to protect [Guerrero]," and Vickie "abandoned [Guerrero] in support of a person" who "had sexually assaulted [Guerrero]."

---

[2]     *See id.* §§ 27.001–.011.

[3]     TikTok is a social media platform that allows users to edit and share short videos with other users. *In re TikTok, Inc.*, 85 F.4th 352, 356 (5th Cir. 2023).

The Bensons also alleged that Guerrero, through the TikTok video, had "knowingly, maliciously, or negligently published" to third parties "false and unambiguous statements that [Kris had] sexually assaulted her." (Internal quotations omitted.) And they asserted that "thousands of people ha[d] already viewed" Guerrero's video.

According to the Bensons, Guerrero's "false statement about [Kris]" that he had allegedly committed a criminal offense, "constitute[d] defamation per se," which had "hurt [Kris] occupationally." Further, as a result of Guerrero's false statement, Kris alleged that he had "suffer[ed] mental anguish, humiliation, embarrassment, and severe damage to his reputation." The Bensons alleged that Guerrero's statement about Kris also "directly and proximately caused injury to [Kris], which resulted in special damages, including harm to his earning capacity, loss of income, and loss of employment." And they alleged that Kris was entitled to exemplary damages because Guerrero had "acted with actual malice in making her defamatory statement about [Kris] because [she] knew at the time she made the statement that it was false."

As to Vickie, the Bensons alleged that Guerrero made "false statements about [Vickie]" that constituted defamation per se in that they accused Vickie "of attempting to improperly influence [Guerrero]," which "amount[ed] to the criminal offense of tampering with a witness." The Bensons sought "special damages,

3

including harm to [Vickie's] earning capacity, loss of income, and loss of employment." They also asserted that Guerrero had "acted with actual malice in making her defamatory statement about Vickie," which entitled Vickie to exemplary damages.

Guerrero answered, generally denying the allegations in the Bensons' petition and asserting various affirmative defenses. Guerrero also moved to dismiss the Bensons' defamation claims against her under the TCPA, arguing that the trial court should dismiss the Bensons' claims because they were "based on or in response to [her] exercise of free speech." Specifically, Guerrero asserted that the Bensons' claims that she defamed Kris "by stating that she and others were sexually assaulted by [him] while on a cruise in 2020" were "accusation[s] of criminal conduct, and thus a statement regarding a matter of public concern for the purposes of the TCPA," as were her claims of "sexual harassment and assault." Guerrero also argued that Vickie was a public figure "because she ha[d] drawn substantial public attention as a well-known figure in the world of professional wrestling." And although Guerrero "disagree[d] with any suggestion" that she had "accused [Vickie] of witness tampering," any such "accusation[] of criminal conduct [was a] matter[] of public concern" for purposes of the TCPA. Thus, according to Guerrero, the Bensons' defamation claims against her were "based on or in response to [her] exercise of the

4

right to free speech" for the purposes of the TCPA.[4]  Further, Guerrero asserted that the Bensons did not have "clear and specific evidence" to make "a prima facie case for each essential element" of their defamation claims as required to survive a motion to dismiss under the TCPA.  Guerrero requested attorney's fees under the TCPA.

In response to Guerrero's motion to dismiss, the Bensons noted that they did not dispute that their "claims for defamation per se [we]re subject to the TCPA." But as to the other alleged defamatory statements purportedly made by Guerrero about Vickie, they denied that Vickie was a public figure for purposes of the TCPA. The Bensons also asserted that they had prima facie evidence of their claims.  And they requested attorney's fees and costs under the TCPA.

In her reply, Guerrero argued that the trial court should dismiss the Bensons' defamation claims against her because the Bensons could not make a prima facie case of defamation.  According to Guerrero, her "statements regarding [the] sexual assault [by Kris] and the events following that assault [were] true," the Bensons "provided no evidence to support a prima facie finding that Guerrero acted with negligence as to [Kris] or with actual malice as to [Kris]," and "[a]s to the claims brought by [Vickie], Guerrero's statements were not defamatory and were protected opinion speech."

---

[4]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).

At the hearing on Guerrero's TCPA motion, the trial court viewed Guerrero's

TikTok video, in which she stated the following:

> So, I think it's time. It's time. I feel I need to make this for myself. I think I need to make it for the miscommunication that I receive from a lot of the fans—and people in general. So, I'm going to go ahead and just start. Because this story can go so into depth that I'd rather just keep it short and get to the point. My family is well known. Obviously. And I'm—literally, it's been two years and I have been so quiet about so much. And, if anybody said anything, cool. If not, I'm pretty sure they're not because it makes them look really bad. And I have protected them for so long that I feel nobody is protecting me. So, I need to start protecting me.
>
> So, a lot of people ask me if I talk to my mom or my sister. And the answer is no. Now, let me go ahead and rephrase this, or tell you: I would love to talk to my mom and my sister. I really would. I need them. And I don't need a lot. And I don't need anybody else—other than my family, right? This is why I didn't want to make this. Because I'm so tired of crying. But I also feel like this is just going to help me not feel like I'm keeping this giant secret. Ok.
>
> So, come 2020, right before Covid, there was a cruise that my family had went on. And, basically, on this cruise, I got sexually assaulted. And the unfortunate part is that it was by my step-dad. Yeah. It was by my step-dad. And, was I the only one? No. But that's not my business to put their story out there. But it happened to me.
>
> And the fact that I protected somebody that doesn't clearly give a shit about me is beyond me. But, hey, you know—growth and maturity, right? There's—there will—I lived with them, so I didn't know what to do. That happened, I was living with them—then Covid happened. Everything shut down. And I basically just became mute, I feel, and very numb. And I got—I worked my ass off to get out of there, and get my own apartment. Which I got in September 2020, that same year. I really did everything I could, to not only protect my mom, but keep the peace and to just get on with my life.

Basically, fast forward, maybe like the following year, when I got injured with my knee, my mom was the only one out here in Houston that's family. And she was helping me with that. And there was basically a conversation. And, granted—let me tell you, I have told my mom how uncomfortable I am with him—after it happened. And, basically, she was always telling me it was a mistake, it's not who he is. Just kind of like, I'm sorry, that's not my problem type deal. And I never really felt like she protected me.

So, when I got injured, money was a thing with my surgery, and having help with that. Blah, blah, blah. The moral of the story is she thought I owe this man—everything. I owe him respect, I owe him just all this stuff. And, last time I checked, anybody that handles me like that—physically—doesn't get my respect. And I really tried to tell my mom that, but she took it as a way of disrespect to her and her relationship. And that meaning she doesn't—she doesn't want anything to do with me if I disrespect her relationship.

I did care about, you know, my mom's career and all that. But, seeing my own mom be okay with abandoning me . . . . And I get people need time to heal, if they're going through something. But, it's been two years, and I've—almost going on three. And I've been blocked. Like, I can't even call my mom. And she's the closest family I know to me. I haven't been able to call her for anything.

. . . .

And it's been fucking hard. My sister felt like she had—did not want to be in the middle. And I would lean on my sister because that's my sister. Like, who else am I going to lean on? But she couldn't do it. I get that boundary, though. I really do. But to go ahead and block me, and act as if I'm just an enemy as well because I need you, and I'm trying to see how to talk to my mom, or just how to get through to her. It just all blew up in my face.

And, it's kinda crazy []cause the family I've told this to sees my side. And they always tell me, like, why are you protecting her? []Cause, nobody's protecting you. And I feel like it's honestly affecting a lot of my relationships. And I don't want it to because that's not me. And I don't want to have this anger anymore.

7

And, the more I keep going to church, I keep forgiving it. And that's why I'm, like, I forgive her so much that I'm, like, I—I'm—okay with whatever happens. Because you chose to do what you had to do. And I have to choose what I have to do. And what I've been choosing isn't really working out for me. Protecting everybody else except for myself is not working out for me.

And the fact that, like, I waited. And I felt like maybe it just needs some time because she's in the middle of this awkward and bad situation—I get it. But to not even follow up a year—to say happy birthday, to say merry Christmas—any, like, holidays. To not, like, reach out to me when, like, family passes away. It's just so fucked up. And I'm just so tired of sitting here silently while they're on social media just acting like . . . . It's fucked up.

. . . And I'm done being silent. I don't care anymore because they left me alone. And I have been in flight or fight mode. And all because I wanted to protect them and their careers. And I feel like they can clearly do that themselves.

I'm speaking up because I'm tired of getting messages. I'm tired of people asking me. I'm tired of people accusing me that I don't talk to my mom. Or that I've separated myself, and I really haven't. Because I reach out to her all the time. I'm just putting this to rest. It is what it is. I have—I am here with open arms, and I know that my family has a lot of healing to do. As do I. But I have to actually start healing now. Instead of waiting for them to come around.

Please respect my journey, and this video. And, it is not to bring, like, anything to them. Unfortunately, it's just facts. And, that's what happened. And I'm done being silent. I'm done getting all these accusations and messages. I'm just saying my piece. And I'm going to continue what I keep doing and building a life for myself. Because I have to support myself and provide for myself.

And, yeah—I literally wish them well. I miss them, and I love them. And I wish that we could talk. And I hope, one day, we do. But my life is out in the world, and it's always been like that. So, I feel like I

have to do this. But—there you go. I hope everyone has a great Sunday.

After the hearing, the trial court granted Guerrero's motion to dismiss, ordered that the Bensons' defamation claims against Guerrero be dismissed with prejudice, and determined that Guerrero was entitled to an award of court costs and reasonable attorney's fees under the TCPA.[5]

## Dismissal under TCPA

In their first and second issues, the Bensons argue that the trial court erred in granting Guerrero's motion to dismiss because the TCPA did not apply to Vickie's defamation claim against Guerrero, the Bensons "established a prima facie case on each claim," and Guerrero did not "establish[] a valid affirmative defense of substantial truth."

We review de novo the trial court's ruling on a TCPA motion to dismiss. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021); *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). In deciding if a legal action should have been dismissed under the TCPA, we consider "the pleadings, evidence a court c[an] consider under [Texas] Rule [of Civil Procedure] 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. §

---

[5] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009.

27.006(a). The plaintiffs' allegations, and not the defendant's admissions or denials, constitute the basis of a legal action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We review the pleadings and evidence in the light most favorable to the nonmovants. *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also Fawcett v. Grosu*, 498 S.W.3d 650, 661 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

The TCPA provides a procedure for the expedited dismissal of retaliatory lawsuits that seek to intimidate or silence citizens on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs.*, 500 S.W.3d 26, 37 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d at 589; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ("The purpose of [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."); *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 688

10

(Tex. App.—Houston [1st Dist.] 2013, pet. denied).  Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to" the party's "exercise of the right of free speech, right to petition, or right of association."  TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019); *Rodriguez v. Universal Surgical Assistants, Inc.*, No. 01-19-00236-CV, 2020 WL 4758426, at *2 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, pet. denied) (mem. op.).  A "[l]egal action" is a "[l]egal complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief."  TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (internal quotations omitted).

To be entitled to dismissal under the TCPA, a movant has the initial burden to "demonstrate[] that [a] legal action is based on or is in response to" the movant's exercise of the right to petition, association, or free speech.  *Id.* § 27.005(b); *see also Lowry v. Fox Television Stations, LLC*, No. 01-20-00627-CV, 2022 WL 2720509, at *4 (Tex. App.—Houston [1st Dist.] July 14, 2022, no pet.) (mem. op.).  If the movant meets her initial burden, then the burden shifts to the nonmovants to establish "by clear and specific evidence a prima facie case for each essential element" of their claims.  TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 199–200 (Tex. 2023).

The nonmovants may satisfy their burden of establishing a prima facie case with "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. This burden is not onerous. Although conclusory statements do not support a prima facie case, the nonmovants generally can establish a prima facie case by showing, for each essential element of a claim, "only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004); *Bibby v. Bibby*, 634 S.W.3d 401, 410 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *see also Baumgart v. Archer*, 581 S.W.3d 819, 825 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff[s] should be sufficient to resist a TCPA motion to dismiss." *In re Lipsky*, 460 S.W.3d at 591.

If the nonmovants establish a prima facie case, the TCPA still allows dismissal if the movant "establishes an affirmative defense or other grounds" on which the movant "is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

## A.  Public Concern

In a portion of their first issue, the Bensons argue that the trial court erred in granting Guerrero's motion to dismiss certain of Vickie's defamation claims against Guerrero because "[t]he TCPA only applies to [Guerrero's] exercise of her right to free speech in connection with a matter of public concern" and Guerrero's statements about Vickie "being a bad, abusive mother" did not constitute a communication made in connection with a matter of public concern as Vickie was not a "public figure."[6]

As noted above, the TCPA allows for the expedited dismissal of claims that are based on or in response to a party's exercise of the right to free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). The TCPA defines the "[e]xercise of free speech" as "a communication made in connection with a matter of public concern." *See id.* § 27.001(3) (internal quotations omitted). A "[m]atter of public concern" includes "a statement or activity regarding . . . a public figure[] or other

---

[6]  The Bensons admit that the TCPA applies to their defamation claims, namely, their claims related to Guerrero's statements that the Bensons allegedly committed criminal offenses, because such statements involve matters of public concern. *See, e.g., Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) ("Public matters include, among other things, commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions." (internal quotations omitted)); *Baumgart v. Archer*, 581 S.W.3d 819, 826 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (reporting of crimes involves matters of public concern); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7) ("Matter of public concern" includes "a statement or activity regarding . . . a subject of concern to the public" (internal quotations omitted)).

13

person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity." *See id.* § 27.001(7)(A) (internal quotations omitted). Whether a person is a public figure is a question of law. *WFAA-TV Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

Here, Guerrero, in her motion to dismiss, asserted that Vickie's defamation claims related to Guerrero's statements about Vickie's treatment of her involved a matter of public concern because Vickie had drawn substantial public attention as a professional wrestling personality. In their briefing, the Bensons acknowledge that Vickie "regularly appeared on cable television prior to 2014 as a 'professional wrestling personality.'" And the record shows that Vickie appeared in more than 300 episodes of World Wrestling Entertainment ("WWE") before large live and broadcast audiences worldwide and is regarded as a "WWE superstar."[7] Further, from 2018 through early 2023, Vickie was involved with "All Elite Wrestling," another professional wrestling company, on its YouTube[8] channel. Vickie also appeared in two WWE video games and began podcasting in 2019.

---

[7] According to its website, WWE currently "broadcasts to more than 180 countries in 30 languages and can be seen in 1 billion television households worldwide each week." *Company Information*, WWE, https://corporate.wwe.com/news/company-information (last visited Aug. 10, 2024).

[8] YouTube is "a popular video-sharing website . . . through which users c[an] post and view video content." *See Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1156 (N.D. Cal. 2020) (order).

14

The Bensons, in their brief, assert that Vickie's audience was not "substantial" enough to give Vickie public figure or celebrity status, but they do not cite any authority that sets a "substantial audience" threshold for determining public figure status under the TCPA, nor do they provide any numbers showing that the professional wrestling audience falls below that threshold. "Substantial" as used in the TCPA refers to the amount of "public attention" drawn by the individual, not necessarily the size of the audience. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A). And public figures or celebrities may be local or regional. *See, e.g.*, *Landry's Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 53 (Tex. App.—Houston [14th Dist.] 2018) (finding Landry's to be "a public figure" as one of the "leading dining, entertainment, gaming, and hospitality groups" (internal quotations omitted)), *aff'd in part, rev'd in part on other grounds*, 631 S.W.3d 40 (Tex. 2021). Individuals may also gain public figure status by virtue of their activities in areas of special interest to only a subset of the public, such as certain sports. *See, e.g.*, *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 279–80 (Tex. App.—Tyler 2021, pet. denied) (former National Football League players were "public figures" for purposes of TCPA).

The Bensons also note that since 2014, Vickie had appeared on the "All Elite Wrestling" YouTube channel but had made only two television appearances. The fact that Vickie is no longer as actively involved in wrestling entertainment

15

programming as she once was, though, does not mean that she is no longer a public figure. A person may achieve public figure status "by aggressively seeking public attention" or by exercising access to the media, but she "cannot erase" her public figure status "by limiting public comment and maintaining a low public profile." *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 435–36 (5th Cir. 1987). In any event, the record shows that Vickie has continued to seek public attention. Some of the alleged conduct described in Guerrero's statements in her TikTok video occurred on a wrestling-themed cruise "vacation experience" in 2020, which was hosted by WWE celebrity Chris Jericho for wrestling personalities and their fans. The record also shows that Vickie appeared as a wrestling personality on streaming platforms as late as 2023. And the damages Vickie has alleged in her first amended petition include losses from the early termination of an employment contract she had with All Elite Wrestling.

Based on these circumstances, we conclude that the trial court did not err in determining that Vickie constituted "public figure[] or other person who ha[d] drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity" and thus Vickie's defamation claims against Guerrero for her statements about Vickie's alleged treatment of Guerrero involved a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A).

We overrule this portion of the Bensons' first issue.

16

**B.     Prima Facie Case**

In the remaining portion of their first issue, the Bensons argue that the trial court erred in granting Guerrero's motion to dismiss as to all of their defamation claims because they established "by clear and specific evidence a prima facie case for each essential element" of their claims.

As noted above, once a movant meets her initial burden of "demonstrat[ing] that [a] legal action is based on or is in response to" her exercise of the right to free speech, the nonmovants must then establish "by clear and specific evidence a prima facie case for each essential element" of their claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b), (c); *USA Lending Grp.*, 669 S.W.3d at 199–200.

A defamation claim requires a plaintiff to prove "(1) the publication of a false statement of fact to a third party, (2) that was defamatory about the plaintiff, (3) with the requisite degree of fault," and in some cases, (4) damages. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). Defamatory statements are those that tend to (1) "injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury" or (2) "impeach any person's honesty, integrity, virtue, or reputation." TEX. CIV. PRAC. & REM. CODE ANN. § 73.001. "Defamation per se refers to statements that are so obviously harmful that general damages may be presumed." *In re Lipsky*, 460 S.W.3d at 593. "The law presumes certain categories of statements are defamatory

17

per se, including statements that (1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity or (2) are falsehoods that injure one in his office, business, profession, or occupation." *See Robinson*, 409 S.W.3d at 690 (emphasis omitted).

In their briefing, the Bensons assert that they established a prima facie case for each of their claims of defamation by specific evidence. As to Kris's defamation per se claim based on Guerrero's statement in the TikTok video that she "got sexually assaulted" by Kris on the 2020 cruise, the Bensons argue that this statement is defamatory per se because, according to the Texas Penal Code, a person commits the offense of "sexual assault" if he intentionally or knowingly:

> (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;
>
> (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or
>
> (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.

TEX. PENAL CODE ANN. § 22.011(1). In her reply in support of her motion to dismiss, Guerrero asserted that her statement about Kris was not defamatory per se because "sexual assault" is commonly understood as merely "touching someone in a sexual way when they do not want you to." But the fact that a term may have more than one meaning does not factor into our analysis at this stage of the proceeding.

18

*See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 632 (Tex. 2018) (explaining if "a statement is capable of at least one defamatory and at least one non-defamatory meaning[,] . . . it is for the jury to determine whether the defamatory sense was the one conveyed" (internal quotations omitted)). In reviewing whether Kris's defamation claim survived a TCPA challenge, the trial court was required to consider only the legal question of whether the words used were reasonably capable of a defamatory meaning. *See id.* at 624. Because the Texas Penal Code defines a criminal offense as "sexual assault" and Guerrero published a statement that Kris had "sexually assaulted" her, without further explanation, the words Guerrero used were reasonably capable of a defamatory meaning, i.e., that Kris had committed the criminal offense of sexual assault against her.

In his declaration attached to the Bensons' response to Guerrero's motion to dismiss, Kris denied sexually assaulting Guerrero either on the 2020 cruise or "ever." Kris also denied Guerrero's statement in her declaration attached to her motion to dismiss, in which she stated that Kris, without her consent, had "forced his hand between [her] thighs from behind and grabbed [her] with his hand in the area of [her] sexual organ." Specifically, Kris stated in his declaration that he had "never forced [his] hand between [Guerrero]'s thighs or grabbed [Guerrero] with his hand on [her] sexual organ." The Bensons, in their response to Guerrero's motion to dismiss, also argued that Guerrero was "negligent regarding the truth of her statement because

19

[her] statements [we]re based on [her] first-hand account of the alleged events" and thus, she was "fully aware of the falsity of her statements."

Guerrero, in her reply in support of her motion to dismiss, asserted that Kris's denials of sexual assault were conclusory, and thus did not constitute the clear and specific evidence required to survive a TCPA motion to dismiss. We disagree. Where one party claims an event occurred and the other claims it did not, a plaintiff's denial can satisfy his TCPA burden to present prima facie evidence of falsity. *See McShirley v. Lucas*, No. 02-23-00229-CV, 2024 WL 976512, at *7 (Tex. App.—Fort Worth Mar. 7, 2024, pet. denied) (mem. op.); *see also Doe v. Cruz*, 683 S.W.3d 475, 497 (Tex. App.—San Antonio 2023, no pet.) (plaintiff satisfied burden of establishing prima facie case for essential element of falsity with affidavit that specifically refuted defendant's allegations of sexual assault of minors and sexual assault more generally); *Van der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied) (holding plaintiff met burden to establish clear and specific evidence of falsity by denying defendant's allegations that he had given money to terrorist organization). Here, Kris denied having committed the specific acts alleged and published by Guerrero. His statements, if uncontested, would be sufficient as a matter of law to establish that he did not commit those acts. *See In re Lipsky*, 460 S.W.3d at 590. Kris also established, for purposes of establishing a prima facie case under the TCPA, that Guerrero had personal knowledge of what

20

had occurred during the alleged incident and so had the requisite level of intent about the falsity of her statement.

Guerrero also argued in her reply in support of her motion to dismiss that the trial court should dismiss Kris's defamation claim against her because she established truth as an affirmative defense to the claim.[9]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).  But in defamation cases involving matters of public concern, "the burden is upon the plaintiff to prove falsity, not upon the defendant to prove truth."  *Van der Linden*,  535 S.W.3d at 198–99.  Because the affirmative defense of truth does not apply to Kris's defamation claim, Guerrero did not meet her burden of establishing a valid affirmative defense to entitle her to dismissal of Kris's defamation claim under the TCPA.

Because Kris met his burden of establishing a prima facie case of defamation per se and Guerrero did not establish a valid affirmative defense, we hold that the trial court erred in granting Guerrero's TCPA motion to dismiss on that claim.

As to Vickie's defamation claims against Guerrero, Vickie alleged that Guerrero was liable for defamation per se based on Guerrero's statements in her TikTok video that after being sexually assault by Kris, Guerrero had financial

---

[9]    In their second issue, the Bensons argue that the trial court erred in granting Guerrero's motion to dismiss because Guerrero did not meet her burden of establishing a valid affirmative defense or other grounds on which she was entitled to judgment as a matter of law.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

21

difficulties that forced her to live with the Bensons, which, according to Vickie, accused her of the criminal offense of witness tampering. *See* TEX. PENAL CODE ANN. § 36.05. Vickie also alleged that Guerrero was liable for defamation based on the following statements in her TikTok video:

- Vickie knew that Guerrero had been sexually assaulted but did not care;

- Vickie characterized the sexual assault as a "mistake";

- Vickie told Guerrero that her having been sexually assaulted "wasn't [Vickie's] problem";

- Vickie failed to protect Guerrero; and

- Vickie abandoned Guerrero in support of a person that Vickie knew had sexually assaulted Guerrero.

"To be actionable as defamation, a statement must be an assertion of verifiable fact, that is, a statement that purports to be verifiable." *Zoanni v. Hogan*, No. 01-16-00584-CV, --- S.W.3d ---, 2023 WL 8939267, at *23 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet.); *see also Bentley v. Bunton*, 94 S.W.3d 561, 583–84 (Tex. 2002). But even "[s]tatements that are verifiably false are not legally defamatory if the context of those statements discloses that they reflect an opinion." *Dickson*, 662 S.W.3d at 363; *Dallas Morning News*, 554 S.W.3d at 639 (no liability for verifiably false statement if context in which statement was made "discloses that it is merely opinion masquerading as fact"); *see also Bentley*, 94 S.W.3d at 581. In

22

examining whether a statement is one of purported fact or opinion, which is a question of law, we interpret the statement in light of the surrounding circumstances based on how a reasonable person would perceive the publication in its entirety, and not merely how portions of the statement might be viewed in isolation. *See Bentley*, 94 S.W.3d at 579; *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000).

A statement is an opinion if it is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder or is otherwise a loose and figurative term." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 511 (Tex. App.—Tyler 2008, pet. denied). In *Dallas Morning News*, the Texas Supreme Court shed light on the kinds of surrounding circumstances that may inform whether a statement is one of purported fact or opinion. *See* 554 S.W.3d at 639. There, the defendant had published a column that quoted from the obituary of the plaintiffs' deceased son and "revealed what the obituary left out": the son's immediate cause of death was suicide, and not a car crash. *Id.* at 622. The column lamented the societal "secrecy surrounding suicide," noting that "averting our eyes from the reality of suicide only puts more lives at risk." *Id.* (internal quotations omitted). The plaintiffs brought a defamation claim against the defendant, alleging that they had interpreted the column "to mean that [they] acted deceptively in publishing" their son's obituary, their son "had a mental illness, which [they] ignored and which led

23

to [his] suicide," and their "deception perpetuate[d] and exacerbate[d] the problem of suicide in others." *Id.* at 636.

The supreme court rejected the court of appeals' conclusion that the column defamed the plaintiffs by accusing them of perpetuating and exacerbating the problem of suicide in others, noting that to the extent the column was "reasonably capable of casting any moral aspersions on the [plaintiffs], it cast[] them as opinions." *Id.* at 640. In determining that the column stated opinion, and not fact, on that issue, the supreme court considered "the type of writing at issue," noting that the column had "used language that convey[ed] a personal viewpoint rather than an objective recitation of fact," used "a first-person, informal style," which "indicate[d] that the format [wa]s subjective rather than objective," and used words that indicated "that the statement [wa]s an opinion." *Id.* at 639.

Here, in Guerrero's TikTok video, she sat alone on the floor of her apartment, where her cat occasionally wandered into view. Noting that her family was "well known," Guerrero stated that she was tired of getting messages accusing her of not reaching out to her mother, Vickie, and she felt like she needed to protect herself by "saying [her] piece" about how the situation between her and Vickie came to be. She then gave her view of how the rift occurred.

Guerrero explained that when the incident on the cruise occurred in early 2020, she had been "living with" the Bensons. After the cruise, she continued to

24

live with them because of the COVID-19 pandemic.[10]  Guerrero worked hard to move out of their home and into her own apartment, which she was able to do several months later, in September 2020.  The next year, she injured her knee and Vickie helped her out again.  According to Guerrero, she tried to talk with Vickie about "how uncomfortable" she was with Kris, but Vickie was less than sympathetic in response and told Guerrero that she perceived Guerrero's lack of respect for Kris "as a way of disrespect to her and her relationship" with Kris.  Since then, Guerrero stated that Vickie had blocked her telephone calls, and Guerrero described her sadness about not having spoken with her mother for more than two years.  Guerrero became obviously emotional at several points while recording the TikTok video, expressing her unhappiness about the estrangement from her mother and her hurt over feeling like her mother did not protect her and was "okay with abandoning [her]."

The statements that Vickie alleges as defamatory, when viewed in context, are part of Guerrero's description of how she became estranged from Vickie and how she felt about it.  Even if Vickie were correct that certain statements, in which Guerrero purportedly recounted what Vickie had said to her, involved objectively verifiable facts, viewing the TikTok video as a whole shows that Guerrero shared

---

[10]  *See generally Kim v. Ramos*, 632 S.W.3d 258, 261 n.5, 266 n.13 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (discussing COVID-19 pandemic).

25

her personal viewpoint, i.e., her own "emotional truth," and not purported fact. In the informal and intimate setting of the video, Guerrero described her emotional journey and expressed her sadness about being estranged from her family. Her recollections about her conversations with Vickie and how they led to Guerrero's feelings of abandonment were no more than "opinion masquerading as fact." *See id.*

For these reasons, we conclude that Vickie did not meet her burden of establishing a prima facie case for each of her claims of defamation against Guerrero. Thus, we hold that the trial court did not err in granting Guerrero's TCPA motion to dismiss as to Vickie's defamation claims. *See In re Lipsky*, 460 S.W.3d at 590.

We sustain the portions of the Bensons' first and second issues challenging the trial court's granting of Guerrero's motion to dismiss Kris's defamation claim against her. We overrule the remaining portions of the Bensons' first and second issues.

### Attorney's Fees

In their fourth issue, the Bensons argue that the trial court erred in denying their request for attorney's fees under Texas Civil Practice and Remedies Code section 27.009(b) because Guerrero's motion to dismiss was "frivolous or solely intended to cause delay."

26

Under the TCPA, nonmovants can recover reasonable attorney's fees and costs if the trial court determines that the movant's TCPA motion to dismiss was "frivolous or solely intended to delay." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(b). We review the trial court's decision to refuse to award costs and attorney's fees to nonmovants under Texas Civil Practice and Remedies Code section 27.009(b) for an abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied); *see also ADB Int., LLC v. Wallace*, 606 S.W.3d 413, 440 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

The TCPA does not define "frivolous," but "the word's common understanding contemplates that a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit." *Patriot Contracting, LLC v. Mid-Main Props., LP*, 650 S.W.3d 819, 831 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (internal quotations omitted); *see also Sullivan*, 551 S.W.3d at 857.

In their briefing, the Bensons argue that they were entitled to recover their attorney's fees under Texas Civil Practice and Remedies Code section 27.009(b) because it was "uncontroverted that [Guerrero] publicly published defamatory and defamatory per se statements about [the Bensons]." As our review of their first and second issues demonstrates, though, the record does not support that argument, and the Bensons do not assert any alternate grounds for reversing the trial court's

27

decision not to award them attorney's fees. Thus, we hold that the trial court did not err in denying the Bensons' request for attorney's fees.

We overrule the Bensons' fourth issue.[11]

## Conclusion

We reverse the portion of the trial court's order granting Guerrero's motion to dismiss Kris's defamation claim against her. We remand that claim to the trial court for further proceedings consistent with this opinion. We vacate and remand the award of attorney's fees to Guerrero for reconsideration in light of this disposition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1); *SPS Austin, Inc. v. Wilbourn*, No. 03-20-00054-CV, 2021 WL 5456659, at \*14 (Tex. App.—Austin Nov. 19, 2021, no pet.) (mem. op.). We affirm the remaining portion of the trial court's order granting Guerrero's motion to dismiss Vickie's defamation claims against her.

Julie Countiss
Justice

Panel consists of Chief Justices Kelly, Countiss, and Rivas-Molloy.

---

[11] Because a disposition of the evidentiary issue raised in the Bensons' third issue would not change the result in this case, we need not reach it. *See* TEX. R. APP. P. 47.1.

28